No. 80-18

IN THE SUPREME COURT OF THE STATE OF MONTANA

1980

---

IN THE MATTER OF THE REVOCATION
OF CERTIFICATE OF REGISTRATION OF
JAMES T. SHAW, Professional Land Surveyor.

---

Appeal from:    District Court of the Eleventh Judicial District,
                In and for the County of Flathead,
                The Honorable James M. Salansky, Judge presiding.

Counsel of Record:

        For Appellant:

            Astle & Astle, Kalispell, Montana

        For Respondent:

            Alan J. Joscelyn, Helena, Montana

---

                        Submitted on Briefs:  July 7, 1980

                                Decided: AUG 2 5 1980

Filed:    AUG 2 5 1980

_Thomas J. Kearney_
                        Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

This is an appeal from the District Court, Flathead County, which affirmed an administrative decision by the Board of Professional Engineers and Land Surveyors of the Department of Professional and Occupational Licensing, revoking appellant's certificate of registration as a registered land surveyor.

In February 1976 James T. Shaw was hired by Dr. John L. Fenner to conduct a boundary survey of some property owned by Dr. Fenner in Section 20, Township 26 North, Range 20 West, Flathead County, Montana. Work on the boundary survey was to be commenced as soon as possible with completion estimated in four to six weeks.

During the spring, summer and fall of 1976, the survey remained uncompleted, despite numerous inquiries and prompting by Dr. Fenner. On December 7, 1976, Shaw filed a certificate of survey with the Flathead County Clerk and Recorder which indicated that monumentation on the survey had been completed. On the face of the survey plat was Shaw's certification that all eight corners shown on the plat had been monumented by a pipe 2-1/2" by 30" set into the ground and topped with a marked aluminum or brass cap. Shortly after the plat was filed, Dr. Fenner paid Shaw in full for work done on the survey.

In March or April 1977 Dr. Fenner discovered, contrary to Shaw's certification, that monumentation for the boundary survey was not complete. On May 23, 1977, Fenner issued a formal complaint with the Board of Professional Engineers and Land Surveyors (Board) listing the problems he had had with Shaw. After receiving the complaint, the Board assigned Roy Bulger to investigate the allegations. During

his investigation, Bulger interviewed Shaw, at which time Shaw admitted that the monuments for the project were not properly installed and in some instances not installed at all. Shaw advised Bulger that the work would be completed by June 22, 1977.

On July 28, 1977, Shaw appeared before the Board regarding the Fenner complaint. Shaw advised the Board at that time that all necessary work had been completed on the survey. Based on the assurances of Shaw, the Board made a finding that the "missing monuments are now in and recorded," and closed the complaint file.

Dr. Fenner, after being informed by the Board that his complaint file was closed, inspected his property and discovered the work was still not complete. Dr. Fenner, shortly afterwards, informed the Board of his discovery. Upon learning that the work was still not completed, the Board notified Dr. Fenner and Shaw and asked them to appear on September 29, 1977. At the time set for their appearances, Fenner appeared and reviewed the matter with the Board. Shaw did not appear. Upon hearing Dr. Fenner, the Board instructed its attorney to begin proceedings to suspend or revoke Shaw's certificate of registration. The Board also assigned Bulger and Charles Hegman to investigate the site of the boundary survey. When inspecting the site on October 4, 1977, they found that the proper monumentation for the property had still not been completed.

The Board met on February 16, 1978, and after reviewing the report by Bulger and Hegman, unanimously passed a motion to instruct its attorney to suspend Shaw's certificate of registration and notify Shaw of the action. However, Shaw's certificate was not suspended, nor was he notified that it had been at that time.

In September 1978, Shaw was advised that the Board proposed to suspend or revoke his certificate and of his opportunity for a hearing on the matter. Notice setting forth the grounds for the proposed action was delivered to Shaw and to his attorney. A hearing on the matter was held November 2, 1978. A hearings examiner issued findings of fact and conclusions of law on January 19, 1979. On the basis of these findings and conclusions, the Board voted to revoke Shaw's certificate of registration.

Subsequently, Shaw filed a petition for rehearing and a motion for stay with the Board. Both the petition and the motion were denied. Shaw then filed a petition for judicial review with the District Court, and a motion for a stay of the Board's decision. The Board's decision was stayed pending the judicial review. On December 10, 1979, the District Court affirmed the Board's decision. Shaw appeals the judgment of the District Court.

Appellant first raises the issue of whether, pursuant to section 37-67-331(2), MCA, the Board is precluded from proceeding on the charges as brought.

Section 37-67-331(1), MCA, states that the Board of Professional Engineers and Land Surveyors can revoke or suspend the certificate of a registrant if found guilty of "gross negligence, incompetency or misconduct in the practice of . . . land surveying as a registered professional . . . land surveyor."

Section 37-67-331(2), MCA, prior to its amendment in 1979, indicates that charges against a registrant engaging in the above improper activity may be brought by any person so long as the charges are made by affidavit and filed with the Board. The section goes on to state that once charges

-4-

are brought they will either be "dismissed by the board as unfounded or trivial, or shall be heard by the board within three (3) months after the date on which they were made." (Emphasis added.)

It should be noted that due to an amendment in 1979, section 37-67-331(2) now provides that within six months of charges being brought, the Board only has to "act" on the charges by dismissing them or notifying the accused of its intent to revoke or suspend his license. The Board under the amendment is not required to provide a hearing within the six-month period; however, in that the activity involved in this appeal occurred during 1977 and 1978, we must look to the language of the statute as stated prior to the 1979 amendment.

Appellant's main contention of error centers on the hearing held November 2, 1978, which resulted in the Board revoking his license. Appellant argues that the Board failed to hold the hearing within three months of the date on which the charges were made, as required by section 37-67-331, MCA. Appellant, in support of this argument, points out that the charges alleged in the Board's notice of proposed action and opportunity for a hearing, dated September 15, 1978, and then dealt with at the hearing on November 2, 1978, are the same charges brought by Dr. Fenner on May 23, 1977, some sixteen months earlier.

The Board, in response, argues that the charges were initiated on the Board's own motion and since there is no specific reference to a period of limitation as to when a hearing must be held on such charges, the proceeding on November 2, 1978, was not barred and thus proper under the statute.

This Court argees that the Board has authority to initiate its own charges and complaint as to alleged improper activity, but we disagree that it also has unlimited discretion as to when it will provide a hearing on those charges. We can find no justification for treating the Board different from the general public as to the procedure to be followed when charges against a registrant have been made.

A registrant who has been charged with improper conduct should not be forced to wait an indefinite period of time before being granted an opportunity to be heard at a proper administrative hearing merely because the complaint was initiated by the Board. The procedure for dealing with charges against a registrant are set out in section 37-67-331(2), MCA, and that section, prior to its amendment in 1979, specifically states that charges will be heard by the Board within three months of their being made. We find this limitation applicable to both charges brought by a member of the general public and those brought by the Board.

The charges brought by the Board on September 15, 1978, are as follows:

"(1) Filing the Fenner plat with the certification that monuments shown on the plat were set, when, in fact, only four monuments were set at most, and none were marked;

"(2) Failing to set and mark the missing monuments in the Fenner matter for more than a year after the plat was filed;

"(3) Stating to Dr. Fenner and to the Board of Engineers and Land Surveyors that the monuments were set and marked when in fact they were not."

The first two charges specifically refer to activity that Dr. Fenner formally complained of in May 1977. At the time that complaint was filed, the Board was fully aware that it would have to either dismiss the complaint or within

-6-

three months provide an administrative hearing on the matter. In this instance, the Board chose to dismiss the complaint. If the court were to now allow the Board to refile those same charges sixteen months later, under the guise that the charges are being initiated on its own motion and, thus, somehow renewed, the three-month limitation would become vacuous of purpose and meaning. We cannot tolerate such an outcome.

The Board, in response to an application of the three-month limitation, argues that even though the charges are based on activity complained of sixteen months earlier, the period of limitations as to when a hearing must be held should not have run in this instance. In support of this argument, the Board contends that had it not been for the false assurances by Shaw when he appeared before the Board on July 28, 1978, the charges would not have been dismissed and the period of limitations would not have been allowed to run. The Board concludes that due to appellant's actions, he is now estopped from asserting that the limitation period has expired.

The doctrine of equitable estoppel is founded in equity and good conscience. Its object is to prevent a party from taking an unconscionable advantage of his own wrong while asserting his strict legal right. Levo v. General-Shea-Morrison (1955), 128 Mont. 570, 280 P.2d 1086.

The essential elements of estoppel are: (1) there must be conduct, acts, language or silence amounting to a representation or concealment of facts; (2) facts must be known to the party estopped at time of his conduct; (3) truth concerning the facts must be unknown to the other party; (4) conduct must be done with the intention that it will be

acted upon by the other party, or under circumstances that is both natural and probable that it will be so acted upon; (5) conduct must be relied upon by the other party; and (6) the party must in fact have acted upon it to his detriment. Smith v. Krutar (1969), 153 Mont. 325, 457 P.2d 459; Kenco v. Cantrell (1977), 174 Mont. 130, 568 P.2d 1225.

This Court believes the Board has established the above elements. Appellant appeared before the Board on July 28, 1977, and informed it that all monuments on the Fenner project were properly installed. At the November 2, 1978 hearing, Dr. Fenner, owner of the property, Charles Hegman, a licensed surveyor and investigator on the complaint against appellant, and Roy Bulger, an additional investigator, all testified that upon examining the Fenner property after the appearance by appellant on July 28, 1977, they discovered monuments that had not been properly set, contra to appellant's assurances. Had the Board been aware that the monuments were not in place on July 28, 1977, it could have instituted the process for revocation or suspension of appellant's license based upon Fenner's charges well within the three-month time limit.

Appellant argues that in spite of the testimony of Fenner, Hegman and Bulger, the record is devoid of evidence necessary to sustain a finding that the monuments had not been set prior to his assurances to the Board on July 28, 1977. We agree that there is conflicting evidence on this question but conclude that the testimony of Fenner, Hegman and Bulger provides substantial evidence to support a finding by the hearings examiner that the assurances by appellant on July 28, 1977, were false.

Appellant misled the Board as to the work done on the Fenner project, thereby lulling it into not acting on the Fenner complaint within the required three months. We now find, therefore, that appellant is estopped from asserting the limitation period had run and, as a consequence, the Board was proper in proceeding with the charges as brought. To allow appellant to assert that the period had expired in this instance would be to allow him to take advantage of his own wrong. Such a holding would be both unconscionable and inequitable.

A second issue raised by appellant is whether the decision of the Board, as affirmed by the District Court, was clearly erroneous in view of reliable, probative and substantial evidence on the record.

In reviewing administrative decisions, this Court need only determine whether there is substantial evidence to support the findings. We will not substitute our judgment for that of the administrative body if such evidence is found to exist. Public Utilities Commission v. Northwest Water Corp. (1969), 168 Colo. 154, 451 P.2d 266; Western Amusement Co., Inc. v. City of Springfield (1976), 274 Or. 37, 545 P.2d 592; Standard Chemical Mfg. Co. v. Employment Security Div. (1980), ___ Mont. ___, 605 P.2d 610, 37 St.Rep. 105.

As to the first two grounds upon which the Board decided to revoke appellant's license, appellant makes no argument as to the sufficiency of the evidence. Appellant merely states that these grounds are based upon Dr. Fenner's complaint and thus barred by the three-month limitation. This issue has already been decided and warrants no further discussion.

As to the third ground upon which the decision to revoke was made, appellant argues the record is "devoid" of evidence needed to support the finding that appellant misled the Board as to work done on the Fenner project. This issue has also been discussed. As stated earlier, even though there was conflicting testimony, there still remains reliable and substantial evidence which supports the findings made. Appellant being unable to persuade this Court that there is a lack of substantial evidence on the record as to the findings made, we are unable to rule that the decision by the Board was clearly erroneous.

Appellant's final argument on appeal is that the hearings examiner failed to make findings of fact as requested on issues essential to the decision. See section 2-4-704(2)(g), MCA.

The first issue appellant claims is essential to a decision in this matter but not dealt with in the findings of fact as requested is that Dr. Fenner removed certain monumentations purposefully.

The testimony of Dr. Fenner indicated that he removed certain monuments. However, he also testified that removal was done to show that the monuments had been set improperly. Dr. Fenner's testimony further indicated that monuments other than the ones removed were also set improperly or not set at all.

The material issue in this case is whether or not all the monuments were set by appellant as certified. The fact that Dr. Fenner may have removed certain monumentations has a bearing on this issue. However, based on Fenner's reasons for disturbing certain monuments and his further testimony

-10-

as to the discovery of other unset monuments, the finding requested by appellant is not so essential in this matter that to omit it alters the outcome of the decision or prejudices appellant's rights.

A second issue claimed by appellant to be essential and ignored by the hearings examiner is that the Board was of the opinion this action was not warranted because appellant was only technically wrong in filing a certificate indicating there were monumentations when in fact there were none.

Without ruling on whether this issue is essential or even supported by the evidence, we need only note that appellant failed to include such a finding in his proposed findings of fact. The finding not having been requested, this Court cannot now rely on it to overturn the Board's decision. See section 2-4-704(2)(g), MCA.

The third issue claimed to be essential but not dealt with in the findings of fact as requested is that the investigations conducted pursuant to the hearing were done improperly and that with surveying equipment the investigators would have been able to find all the monuments.

We disagree with appellant's contention. Even without the use of surveying equipment, the investigators were able to testify that they discovered monumentation that was incomplete. Thus, even if all the monuments had been found, it would not have changed the outcome of the decision rendered.

This Court is unable to find that appellant's rights were prejudiced at the administrative level or by the District Court's affirmation of the Board's decision. Therefore, the judgment of the District Court is affirmed.

_____
Justice

-11-

We concur:

_____
Chief Justice

_____

_____

_____
Justices