No. 14884

IN THE SUPREME COURT OF THE STATE OF MONTANA

1981

HELEN HARBECK,

Plaintiff and Respondent,

-vs-

LOUISE T. ORR, MYRON C. ORR, JUANITA
L. ORR and THE FIRST MONTANA TITLE
INSURANCE COMPANY,

Defendants and Appellants.

Appeal from: District Court of the Fourth Judicial District,
In and for the County of Missoula,
The Hon. Jack L. Green, Judge presiding.

Counsel of Record:

For Appellant:

Norman C. Robb argued, Missoula, Montana
James, Sogard & McCafferty, Great Falls, Montana
Lee A. Jordan argued, Missoula, Montana

For Respondent:

Milodragovich, Dale & Dye, Missoula, Montana
Michael J. Milodragovich argued, Missoula, Montana

Submitted: February 19, 1981

Decided: April 30, 1981

Filed: APR 30 1981

Clerk

Mr. Justice Fred Weber delivered the Opinion of the Court.

Defendants Louise Orr (mother) and Myron and Juanita Orr (son and daughter-in-law) appeal from the final order of the Fourth Judicial District, granting partial summary judgment to the plaintiff, Helen Harbeck (Harbeck). Based upon the parties' agreed statement of facts, summary judgment was entered decreeing that the life estate claimed by the mother, through her notice of life estate as recorded in Missoula County, was void and of no force or effect. The court reserved various other matters for trial to the court. Defendant First Montana Title Insurance Company does not join in this appeal.

Issues discussed in this opinion are as follows:

1. Did the District Court err in concluding that the mother does not have a life estate interest in the property?

2. Are the mother, son and daughter-in-law barred by estoppel from claiming a life interest in favor of the mother?

The District Court concluded that the mother could not have a life estate because she could not have reserved a life estate in the 1974 contract for deed between herself and her son and daughter-in-law. The court found that the mother did not then hold legal title to the property, thus precluding any reservation in favor of herself. We hold that the District Court erred in adopting such a narrow conclusion based upon the facts of this case.

The following is a summary of the complex facts in order of date:

1. The mother owned real property in Missoula which included a duplex apartment house and space for parking mobile homes. In 1971, the mother entered into an oral agreement with her son and daughter-in-law to sell the

property to the said son and daughter-in-law. The parties orally agreed that the mother would remain living in one of the apartments "for free" for the rest of her life.

2. The son and daughter-in-law attempted to obtain financing to accomplish this sale, but were unable to do so because of credit problems. For credit purposes, at the request of the son and daughter-in-law, the mother deeded the property by warranty deed to the daughter-in-law's parents. A mortgage loan then was granted by a bank to the daughter-in-law's parents, the record title holders. The son and daughter-in-law received the loan proceeds.

3. Six months later in 1971, the mother as seller and the son and daughter-in-law as buyers reduced the oral agreement to a handwritten contract of sale. The contract included a provision stating that the mother had the right to live in the duplex "rent free" for as long as she desired. The handwritten contract was executed by the parties even though title to the property at that time was held by the daughter-in-law's parents.

4. The son and daughter-in-law were unable to keep up the payments required to be made to the mother under the terms of the handwritten contract. In 1974, the mother filed suit sounding in fraud against the son, daughter-in-law, and the daughter-in-law's parents. Suit was settled when the daughter-in-law's parents quitclaimed title to the property to the son and daughter-in-law, subject to the existing mortgage. The son and daughter-in-law thereupon entered into a formal, written contract for deed with the mother. With regard to the life estate, the contract for deed contained the following provisions:

-3-

"III. . . .

"A. It is agreed the [mother] now lives in the north unit of the duplex building located upon the property and that she is entitled to remain in possession thereof, rent free, for the rest of her life; provided, however, it is mutually agreed by the parties that if the [mother] should change her place of residence prior to her death then her said right to the use and possession of the north unit of the duplex building shall thereupon terminate and the [son and daughter-in-law] shall then be entitled to the use, possession and enjoyment of said north unit. . .

"VI. . . .

"B. The [mother] agrees that as long as she lives in the north unit of the duplex building located upon said real property she will be responsible for and that she will pay and do the following: (1) she will pay for all gas, lights, electricity, water, heat, phone, television, utilities used, consumed or charged upon or against said north unit; (2) she will pay for any repairs, maintenance, upkeep and painting of the inside of the said north unit; (3) she will pay all taxes that may be levied, assessed or imposed upon or against her personal property located inside the said north unit of the duplex or which may be located elsewhere upon said real property; (4) it is her obligation to secure and pay for such insurance as she may desire to carry upon her personal property that she may have or locate upon said real property or in the north unit of the duplex building."

The contract for deed was executed by the mother as seller and by the son and daugher-in-law as buyers. At the time of the contract's execution in 1974, the record title to the property was held by the son and daughter-in-law. Notice of the contract for deed was not placed on record.

5. The son and daughter-in-law later put the property up for sale. Harbeck, through her real estate agent and daughter, Sally Lucas (Lucas), made an offer on the property. After extensive negotiations an agreement was executed between the son and daughter-in-law as sellers and Harbeck as buyer for sale of the property. The agreement contained a "rent-back" provision, under which the son and daughter-

-4-

in-law agreed to pay a monthly rent to Harbeck for the apartment occupied by the mother for a term of five years, with an option to extend for an additional five years.

During the negotiations for the sale of the property, Lucas received the full details of the mother's life estate both by examination of the written contract and by meeting with and talking to the mother and son and daughter-in-law. The agreed statement of facts includes the following:

> "11. Myron C. and Juanita L. Orr informed Sally Lucas of the right of Louise T. Orr to remain in possession of and live rent free for the rest of her life in the north unit of the duplex building and they delivered their copy of the contract for deed of March 22, 1974, containing the provision quoted above in Paragraph 17 above and Sally Lucas read the same at least twice before she made an offer on behalf of Helen Harbeck to purchase the subject property. Sally Lucas also talked to Louise T. Orr about the property and Louise T. Orr informed Sally Lucas of her said right to live rent free for the rest of her life."
> (Emphasis added.)

Subsequently, the mother caused to be recorded in Missoula County a notice of life estate which set forth her claim of interest. The present action was brought by Harbeck after the son and daughter-in-law had failed to make the rental payments required under the "rent-back" provisions of their agreement with Harbeck.

The parties stipulated as to the agreed facts. Harbeck moved for summary judgment in her favor. The District Court entered partial summary judgment for Harbeck. The trial court also had the authority to render summary judgment for the opposing parties. In Hereford v. Hereford (1979), ____ Mont. ____, 598 P.2d 600, 602, 36 St.Rep. 1454, 1456, this Court stated:

> "The invocation of the power of a court to render summary judgment in favor of the moving party gives the court power to

render summary judgment for his adversary provided the case warrants that result. However, the court must be very careful that the original movant had a full and fair opportunity to meet the proposition, that there is no genuine issue of material fact and the other party is entitled to judgment as a matter of law."

We find that plaintiff Harbeck did have a full and fair opportunity to meet the stated proposition. Harbeck's motion was extensively briefed by all parties. In the brief of defendants, the son and daughter-in-law, the court was specifically asked to render summary judgment for the defendants, based upon the grounds discussed herein. Harbeck had an opportunity to reply to defendants' briefs and the arguments therein. In addition, all facts material to the action were stipulated to by Harbeck in the agreed statement of facts upon which the District Court relied. All requirements of Hereford are met here.

A contract must receive such an interpretation as will make it operative and capable of being carried into effect, if it can be done without violating the intention of the parties, under former section 13-709, R.C.M., 1947, now section 28-3-201, MCA. A contract must be interpreted so as to give effect to the mutual intention of the parties as it existed at the time of contracting. Former section 13-702, R.C.M., 1947, now section 28-3-301, MCA. The writing itself governs intention. Former section 13-705, R.C.M., 1947, now section 28-3-303, MCA. Where the contract is clear and explicit in its terms, we must look to its language alone to find the intention of the parties. Former section 13-704, R.C.M., 1947, now section 28-3-401, MCA; Batey Land & Livestock Co. v. Nixon (1977), 172 Mont. 99, 106, 560 P.2d 1334, 1337. Frank v. Butte & Boulder Mining & Lumber Co. (1913), 48 Mont. 83, 89-90, 135 P. 904, 905.

We hold that the words "entitled to remain in possession thereof, rent-free, for the rest of her life" are clear and unambiguous. Plainly, they disclose the intention to give to the mother a life estate in the property. The balance of the 1974 contract provisions clearly show an intention to create such a life estate by providing as to all of the details of such estate, including the matter of repairs, replacement, taxation, utilities and other provisions. The contractual obligation to grant a life estate to the mother are clearly expressed in the contract. See annotation, 45 A.L.R.2d 699.

Harbeck argues that the contract provision is void according to former section 13-404, R.C.M., 1947, now section 28-2-603, MCA, because performance is wholly impossible. Harbeck claims that it is impossible for the reason that the mother cannot reserve a life estate to herself when the title is actually already held by the son and daughter-in-law. The 1974 contract answers this argument. It clearly indicates the agreed intention on the part of the title holders, the son and daughter-in-law, that the mother be entitled to remain in possession of the property, rent-free for the rest of her life. A reservation need not be implied on the part of the mother. This Court properly may enforce the contract provisions which so clearly set forth the intention of the parties.

Pursuant to the provisions of the 1974 contract, payment of the entire contract balance was made by the son and daughter-in-law to the mother, in exchange for which the mother delivered a warranty deed. Such deed does not contain a specific reservation of life estate.

The contract for deed between the mother and son and daughter-in-law and the life estate contracted for therein,

are effective and enforceable as against the parties and also against subsequent purchasers who have notice of the contract. Former section 73-205, R.C.M., 1947, now section 70-21-102, MCA. Harbeck argues that she had no notice of the life estate. Lucas, the duly authorized agent for Harbeck, a trained real estate agent, acted for her throughout the transaction. As previously described, Lucas read the contract twice and also discussed the existence of the life estate with the mother and with the son and daughter-in-law. The result is that Harbeck, through her agent, had actual notice of the contract and the life estate granted therein. Former section 19-105, R.C.M., 1947, now section 1-1-217, MCA.

Harbeck argues that, although she may have seen and read the contract, she misunderstood the meaning of the life estate provisions and was misadvised as to the effect. Apparently Harbeck believes such a misapprehension shows a lack of knowledge or notice. The contract is clear, explicit and unambiguous. Any misunderstanding on the part of Harbeck as to legal effect cannot assist her. Quirk v. Rich (1910), 40 Mont. 552, 565, 107 P. 821, 826.

Harbeck argues that the mother and son and daughter-in-law should be estopped from asserting the life estate, because they acted at all times as if the mother was a tenant, prompting Harbeck to rely thereon to her detriment. Harbeck cites the rent-back provision in the contract between Harbeck and the son and daughter-in-law, and also the mother's not being responsible for taxes, utilities and maintenance expenses. Harbeck argues that such actions are more in keeping with a tenancy rather than with a life estate.

Whether or not the doctrine of equitable estoppel will apply to bar the mother and son and daughter-in-law from

asserting the mother's claim to a life estate is dependent upon the particular facts of the case. Lindblom v. Employers' Liability Assur. Corporation (1930), 88 Mont. 488, 494, 295 P. 1007, 1009. The general elements which must be established in order to invoke equitable estoppel have been often stated by this Court. One of the elements is lack of knowledge and lack of a readily available means of knowledge as to the true facts on the part of the person claiming estoppel. Matter of Shaw (1980), ___ Mont. ___, 615 P.2d 910, 914, 37 St.Rep. 1480, 1484; In Re Marriage of Adams (1979), ___ Mont. ___, 604 P.2d 332, 334, 36 St.Rep. 2374, 2377. Ignoring the other elements, it is clear that this required element is not present under the facts. The 1974 contract was read and studied by Lucas, the authorized agent for Harbeck. The contract language is clear and unambiguous as to the mother's life estate. The contract specifically provides that the mother is responsible for all utility and maintenance expenses incurred because of her use of the north unit of the duplex. Plainly, Harbeck has failed in proving an element essential to the application of the doctrine of equitable estoppel. We reverse the order of the District Court granting partial summary judgment to Harbeck. We hold that summary judgment shall be granted to the mother and son and daughter-in-law. We remand the case to the District Court for appropriate action to accomplish the following:

1. Execution and delivery of a deed from the son and daughter-in-law to the mother granting a life estate as required under the 1974 contract.

2.  Reformation of the deed from the son and daughter-in-law to Harbeck in order to provide that such deed is subject to the life estate from the mother to the son and daughter-in-law.

_____
                              Justice

We concur:

_____

_____

_____

_____
            Justices