No. 96-664

# IN THE SUPREME COURT OF THE STATE OF MONTANA

1997

ELK PARK RANCH, INC., a
Montana Corporation; CHANNELL
LIBBEY; DAVID A. HAUG; CHARLES
KESTING; DAVID AMSK; ROBERT
PAYNE; and LEMONT LAND CORP.,
a Montana Corporation,

        Plaintiffs and Appellants,

v.

PARK COUNTY, a political
subdivision of the State of
Montana, and the CLERK AND
RECORDER OF PARK COUNTY,

        Defendants and Respondents.

APPEAL FROM:    District Court of the Sixth Judicial District,
In and for the County of Park,
The Honorable David Cybulski, Judge presiding.

COUNSEL OF RECORD:

    For Appellants:

    James A. McLean, Drysdale, McLean & Nellen, Bozeman, Montana

    For Respondents:

    Tara DePuy, Park County Attorney, Livingston, Montana

Submitted on Briefs: January 30, 1997

Decided:  April 8, 1997

Filed:

_____
        Clerk

Justice William E. Hunt., Sr. delivered the Opinion of the Court.

Appellants Elk Park Ranch, Inc., et al. (Landowners), appeal the decision of the Sixth Judicial District Court, Park County, granting Respondent Park County's motion for summary judgment.

## ISSUES

The Landowners raise two issues on appeal:

1. Did the District Court err in determining that the Landowners could not create twenty-acre tracts of record from a larger parcel by executing and recording a series of one-party deeds prior to the effective date of the 1993 amendments to the Montana Subdivision and Platting Act (the Subdivision Act)?

2. Did the District Court err in concluding that Park County was not equitably estopped from denying the Landowners' establishment of twenty-acre tracts and from refusing to accept the one-party deeds of conveyance for the twenty-acre tracts?

## FACTS

The facts in this case are not in dispute. The following agreed-upon facts and law are relevant to this appeal:

1. Park County is a political subdivision of the State of Montana. The Clerk and Recorder of Park County is an elected official. Elk Park and LeMont are Montana corporations having their principal offices in Livingston, Montana. The individual appellants are all residents of Park County, Montana.

2. Effective on April 6, 1993, the legislature of the State of Montana amended the Subdivision Act, found at § 76-3-101, et. seq., MCA. One such amendment changed the definition of what constitutes a subdivision in the State of Montana. The pertinent sections of the amended Subdivision Act that define a subdivision and that are material and relevant to this case are:

> **Section 76-3-103(14), MCA.** "Subdivision" means a division of land or land so divided that creates one or more parcels containing less than 160 acres that cannot be described as a one-quarter aliquot part of a United States government section, exclusive of public roadways, in order that the title to or possession of the parcels may be sold, rented, leased, or otherwise conveyed and includes any resubdivision and further includes a condominium or area, regardless of its size, that provides or will provide multiple space for recreational camping vehicles or mobile homes.

> **Section 76-3-103(15), MCA.** "Tract of record" means a parcel of land, irrespective of ownership, that can be identified by legal description, independent of any other parcel of land, using documents on file in the records of the county clerk and recorder's office.

> **Section 76-3-104, MCA.** What constitutes subdivision. A subdivision comprises only those parcels containing less than 160 acres that cannot be described as a one-quarter aliquot part of a United States government section when the parcels have been segregated from the original tract. The subdivision plat must show all the parcels whether contiguous or not.

3. The size of land defined as a subdivision in the Subdivision Act prior to said amendments was 20 acres; that is, if a division of land was 20 acres or more, there was not a requirement to comply with the Subdivision Act.

4. Furthermore, prior to and after the 1993 amendments to the Subdivision Act, a survey of land (other than a subdivision) was not required for division of land for sale if the

3

land could be described as a 1/32 or larger aliquot part of a United States government section or lot. Section 76-3-401, MCA.

5. In February or March of 1993, prior to the effective date of the amendments to the Subdivision Act of April 6, 1993, a representative of Elk Park and LeMont, namely Kelly Meyers (Meyers) and their counsel, Karl Knuchel (Knuchel) had informal unplanned meetings with the then Park County Commissioners, the then Park County Attorney, William Nels Swandal (Swandal), and the then Park County Clerk and Recorder. Knuchel and Meyers expressed to Park County the desire of Elk Park and LeMont to record deeds with Park County of certain tracts of land owned by them by describing the land in separate twenty acre aliquot tracts. The Park County officials understood that it was Elk Park and LeMont's goal to establish separate twenty acre tracts before the effective date of the amendments to the Subdivision Act, in order to allow them to sell the twenty acre tracts to third parties without being subject to the new amendments of the Subdivision Act requiring subdivision review, surveying and platting of tracts of 160 acres or less.

6. Elk Park and LeMont suggested that the land owned by them could be separately described by each owner all on a single deed, in twenty acre aliquot tracts wherein the owner would be both the grantor and the grantee (a one-party deed). The other methods discussed were to have a separate deed for each twenty acre tract using a one-party deed, using a single deed or separate deeds by the use of a separate cooperative third party as the grantee (a

4

"straw man"), who would then convey the twenty acre tracts back to the owners after recording the deed or deeds.

7. The then Park County Commissioners and the then Clerk and Recorder advised Knuchel and Meyers that the legal opinion of the County Attorney would be required by them in the decision as to the type of deed(s) which would be acceptable to the county for recording.

8. Swandal, the then Park County Attorney, was consulted and his opinion was that there was no legal impediments to recording the one-party deeds and he advised that the deeds could be recorded. He did not think it was necessary to use a straw man to create the separate twenty acre tracts. In his opinion as County Attorney, once a deed describing twenty acres in aliquot parts was filed before the effective date of the Subdivision Act, that deed would be of record and the parties could transfer the tracts out in accordance with that description.

The reasoning of the County Attorney at this time was that Elk Park could create a fictional legal entity and effectuate the transfer. However, the County Attorney felt that although Park County could require the filing of separate deeds for each tract, it was more efficient to allow the transfer on a one-party deed.

9. Based on the County Attorney's opinion and the County Commissioner's and Clerk and Recorder's acquiescence in that opinion, several one-party quit-claim deeds were recorded by the various Landowners.

10. In an action filed on May 24, 1993, for a Writ of Mandamus against the Ravalli County Clerk and Recorder, on July 12, 1994, the Montana Supreme Court decided Rocky Mountain Timberlands Inc. v. Lund (1994), 265 Mont. 463, 877 P.2d 1018, holding that a landowner cannot divide a large tract of land into twenty acre tracts by executing and recording a deed in which the grantor and the grantee are the same party. The Court held that such a deed was not a transfer and therefore not a division. The Court did not discuss in the decision the concept of "tracts of record" as defined in § 76-3-103(15), MCA. Prior to April 6, 1993, tracts of record were not defined in the Subdivision Act.

11. After the above decision came down, the then Park County Clerk and Recorder asked Swandal, the then Park County Attorney, if the one-party deeds should be removed from the record. Swandal told him, no, for two reasons: one, he thought that they were probably equitably estopped from doing so because of the previous meetings approving the filing of the one-party deeds and two, because he did not think the removal of the deeds could be accomplished without a court order.

12. On May 17, 1995, Denise Nelson (Nelson), the new Park County Clerk and Recorder, wrote and mailed the following letter to each of the Landowners:

Re: Aliquot part division of property.

On April 2, 1995, a document was recorded at the Park County Clerk and Recorder's Office describing the above property in aliquot parts. This does not constitute a division of land under Montana law. Attorney General's Opinion No. 66, Volume No. 38, states: "A segregation of one or more parcels of land from a larger tract held in single or undivided ownership constitutes a division of land under section 76-3-103(3), MCA, REGARDLESS OF HOW

6

THE LARGER TRACT IS DESCRIBED IN RELATION TO ALIQUOT PARTS OF A UNITED STATES GOVERNMENT SURVEY."

Park County will not transfer any of the above described property and separate parcels unless they undergo subdivision review.

13. On July 1, 1995, Elk Park sold to Yellowstone II Development Group, Inc., a Montana Corporation (Yellowstone II), certain real property, including 28 twenty acre parcels described in the Elk Park one-party deeds referenced above. A "Notice of Purchaser's Interest in and to Real Property" referencing the sale from Elk Park to Yellowstone II pursuant to an Agreement for Sale and Purchase of Real Estate and Option to Purchase Real Property under an installment contract was accepted and recorded by Nelson on July 14, 1995.

14. On July 20, 1995, Tara DePuy (DePuy), who succeeded Swandal as Park County Attorney, wrote a letter to Jeffrey Pence, an attorney who represented certain parties who were opposed to the development of the Elk Park property and the sale to Yellowstone II, in which she stated "it is my opinion that Park County is estopped from denying the deeds that Elk Park is now recording."

15. On or about August 30, 1995, a meeting was held with the Park County Commissioners, Park County Attorney, Clerk and Recorder, Park County Planner, the Landowners (or their representatives), representatives of Yellowstone II, and other interested parties. The purpose of the meeting was to discuss what to do about the one-party deeds and

7

the conveyance of 20 acre tracts to third parties out from the twenty acre descriptions contained in the one-party deeds in view of the Rocky Mountain Timberlands, Inc. case.

16. As a result of the meeting, DePuy requested an Attorney General's Opinion on the issue of whether Park County was estopped from refusing to accept deeds of conveyance for twenty acre aliquot tracts purportedly created by the one-party deeds. The Attorney General's Office refused to issue an Opinion in the matter.

17. On September 19, 1996, Nelson, the Park County Clerk and Recorder, wrote a representative of Yellowstone II, advising:

> On July 14, 1995, a Notice of Purchaser's Interest in and to Real Property was recorded on Role 109, pages 147-150, document #247254. This letter is to notify you that the instrument of conveyance underlying this notice of interest is unrecordable and may be void according to Montana's Subdivision Regulations.

Park County's position is that the reference in the letter to the term "instrument of conveyance" was a reference to the Elk Park one-party deed.

18. Yellowstone II subsequently defaulted in making its payments to Elk Park due on September 14, 1995, and Elk Park served a Termination Notice dated September 15, 1995, advising that by reason of the default in failing to make the payments due, Elk Park was terminating the contract. Elk Park then terminated the escrow arrangement with Yellowstone II and recorded the Quit Claim Deed in escrow conveying the property sold back to Elk Park.

19. On October 22, 1995, the attorney for Yellowstone II wrote a letter to the attorney for Elk Park alleging rescission of the agreement and demanding the return of the down payment.

20. On May 16, 1996, Yellowstone II filed a complaint in the Sixth Judicial District Court, Park County, against First American Title Insurance Company, Elk Park, Inc., and Park County, asking for rescission and damages against Elk Park, damages against Park County for negligent misrepresentation, and damages against First American for breach of contract and unfair settlement practices. That action is still pending.

21. On November 27, 1995, the Landowners petitioned the District Court for a declaratory judgment to establish the validity of their one-party quit-claim deeds. Subsequently, both parties moved for summary judgement, and the District Court granted summary judgment in favor of Park County. The Landowners appeal.

*STANDARD OF REVIEW*

Our standard of review in appeals from summary judgment rulings is de novo. Treichel v. State Farm Mutual Automobile Insurance Company (1997), 930 P.2d 661, 663, 54 St.Rep. 1, 2 (citing Motarie v. Northern Montana Joint Refuse Disposal District (1995), 274 Mont. 239, 242, 907 P.2d 154, 156; Mead v. M.S.B., Inc. (1994), 264 Mont. 465, 470, 872 P.2d 782, 785). When we review a district court's grant of summary judgment, we apply the same evaluation as the district court based on Rule 56, M.R.Civ.P. Treichel, 930 P.2d at 663 (citing Bruner v. Yellowstone County (1995), 272 Mont. 261, 264, 900 P.2d 901,

903). See also Bartlett v. Allstate Insurance Company (1996), 929 P.2d 227, 230, 53 St.Rep. 1300, 1301-02.

Moreover, in proving that summary judgment is appropriate:

The movant must demonstrate that no genuine issues of material fact exist. Once this has been accomplished, the burden then shifts to the non-moving party to prove by more than mere denial and speculation that a genuine issue does exist. Having determined that genuine issues of material fact do not exist, the court must then determine whether the moving party is entitled to judgment as a matter of law. [This Court] reviews the legal determinations made by the district court as to whether the court erred.

Bruner, 900 P.2d at 903. In the case at bar, the parties have agreed to the relevant facts. Therefore, this Court's review is limited to whether the District Court was correct in concluding that Park County was entitled to summary judgment as a matter of law.

## DISCUSSION

1. Did the District Court err in determining that the Landowners could not create twenty-acre tracts of record from a larger parcel by executing and recording a series of one-party deeds prior to the effective date of the 1993 amendments to the Subdivision Act?

The Landowners first argue that the District Court erred as a matter of law in concluding that they could not create numerous twenty-acre tracts from a single, larger parcel using one-party deeds prior to the effective date of the current Act. The District Court concluded that the issue of a landowner's ability to use one-party deeds for this purpose was conclusively settled by this Court's decision in Rocky Mountain Timberlands, Inc. v. Lund (1994), 265 Mont. 463, 877 P.2d 1018.

In Rocky Mountain Timberlands, this Court noted that the appellants' "whole purpose in recording [one-party] deeds was to divide its [larger] tract into smaller parcels minimally large enough to avoid the survey and platting requirements of the Subdivision and Platting Act." 877 P.2d at 1020-21. In the case at bar, the Landowners' admittedly sought to use one-party deeds for the same purpose (see Stipulated Fact No. 5, above). But this Court held in Rocky Mountain Timberlands that "a transfer of land requires a conveyance of title from one person to another. If the persons are the same, then a transfer does not occur. If there is no transfer, then there is no division of land under § 76-3-103(3), MCA." We therefore expressly held that "a landowner cannot divide a large parcel of land into smaller parcels by executing a deed in which the grantor and grantee are the same party." 877 P.2d at 1021. Given this holding, the District Court correctly concluded that Rocky Mountain Timberlands controlled the case at bar and dictated that the Landowners' attempt to avoid the Subdivision Act using one-party deeds must fail.

On appeal, the Landowners attempt to distinguish Rocky Mountain Timberlands by referring to the smaller twenty acre parcels as "tracts of record." A "tract of record" is statutorily defined as "a parcel of land, irrespective of ownership, that can be identified by legal description, independent of any other parcel of land, using documents on file in the records of the county clerk and recorder's office." Section 76-3-103(15), MCA. The Landowners argue that the term "tract of record" is a stand-alone definition, meaning that if a deed were filed and of record describing twenty acre parcels of land before the effective

date of the Subdivision Act, the parcels created should be deemed established as "tracts of record" by operation of law and "grandfathered" in before the effective date of the amended Act.

This argument, which is essentially one of semantics, does not address, much less overcome, the fact that a one-party deed is ineffective to divide a large parcel of land into several smaller parcels. Rocky Mountain Timberlands, 877 P.2d at 1021. The one-party deeds which attempt to do this are void and without legal effect. The Landowners cannot seriously argue that the void one-party deeds somehow serve to accomplish a legitimate property transfer simply because the void deeds were accepted and filed with the clerk and recorder's office. The recording of a deed does not establish the deed's validity. McDonald v. Jones (1993), 258 Mont. 211, 216, 852 P.2d 588, 591. To the contrary, "[r]ecordation is a device to establish priority, but has nothing to do with conveying title." Blakely v. Kelstrup (1985), 218 Mont. 304, 306, 708 P.2d 253, 254 (citation omitted). The Landowners' attempt to construe the smaller parcels created via the one-party deeds as "tracts of record" does not establish the legitimacy of the property transfer, which was patently illegal according to Rocky Mountain Timberlands.

Moreover, we note that the Landowner's reliance on the statutory definition of the term "tracts of record" is inconsistent with their attempt to circumvent the effect of the amended Act. The definition of "tracts of record" did not exist at the time the Landowners created the one-party deeds, and is contained in the very amended Act the deeds were

12

intended to avoid. The Landowners, therefore, attempt to rely on a provision of the Act, but at the same time argue that the Act should not apply to them.

The Landowners next explain that the effect of the one-party deeds was not to "divide" the land in defiance of the law as articulated in <u>Rocky Mountain Timberlands</u>, but rather merely to "segregate" it. While the terms "divide" and "segregate" may have distinguishable meanings in other circumstances, the use of the word "segregate" in place of the word "divide" in this case is a distinction without a difference, and a transparent attempt to frustrate the law.

It is admitted that the Landowners' aim in employing the one-party deeds was to "create twenty acre tracts for transfer purposes" from a single larger parcel of land. We fail to see how it is possible to take one large parcel of land and make it into several smaller parcels of land without dividing it. Pursuant to <u>Rocky Mountain Timberlands</u>, land cannot be divided via a one-party deed. 877 P.2d at 1021. The Landowners cannot avoid the effect of that decision simply by employing the word "segregate" in place of the word "divide." The District Court did not err in concluding the Landowners' one-party deeds were invalid and could not serve to divide their land into units small enough to avoid the operation of the amended Subdivision Act.

2. Did the District Court err in concluding that Park County was not equitably estopped from denying the Landowners' establishment of twenty-acre tracts and from refusing to accept the one-party deeds of conveyance for the twenty-acre tracts?

The Landowners next argue that Park County should be equitably estopped from denying the validity of the one-party deeds due to its apparent acquiescence in the Landowners' filing of the disputed deeds. The Landowners contend that they used the one-party deeds in reliance on Park County's representation that the use of the one-party deeds was legal and acceptable to the county. They argue that Park County should not now be heard to deny the validity of the deeds which it knew would be filed and in fact, at least initially, accepted and filed. The District Court, however, concluded that the doctrine of equitable estoppel did not apply in this case. We agree.

The doctrine of equitable estoppel is grounded both in statute and in case law. Section 26-1-601, MCA, provides:

> The following presumptions are conclusive: 1) the truth of a declaration, act, or omission of a party, as against that party in any litigation arising out of such declaration, act, or omission, whenever he has, by such declaration, act, or omission, intentionally led another to believe a particular thing true and to act upon such belief . . . .

Section 26-1-601(1), MCA. In order to prove equitable estoppel, a party must show:

> 1. the existence of conduct, acts, language, or silence amounting to a representation or a concealment of a material fact;
> 2. these facts must be known to the party estopped at the time of his conduct, or at least the circumstances must be such that knowledge of them is necessarily imputed to him;
> 3. the truth concerning these facts must be unknown to the other party claiming the benefit of the estoppel at the time it was acted upon by him;
> 4. the conduct must be done with the intention, or at least the expectation, that it will be acted upon by the other party, or under circumstances both natural and probable that it will be so acted upon;
> 5. the conduct must be relied upon by the other party and, thus relying, he must be led to act upon it; and

14

6. he must in fact act upon it in such a manner as to change his position for the worse.

Dagel v. City of Great Falls (1991), 250 Mont. 224, 234-35, 819 P.2d 186, 192-93 (citing Sweet v. Colborn School Supply (1982), 196 Mont. 367, 639 P.2d 521). If any one of these elements is not present, the theory of equitable estoppel cannot be invoked. Dagel, 819 P.2d at 193.

Equitable estoppel, by its terms, requires the misrepresentation of a material fact. Dagel, 819 P.2d at 193; In re Marriage of K.E.V. (1994), 267 Mont. 323, 331, 883 P.2d 1246, 1252 (citing Minervino v. University of Montana (1993), 258 Mont. 493, 497, 853 P.2d 1242, 1245) (emphasis added). It is an appropriate remedy if "a party is denied the right to prove an otherwise important fact because of something which the party has done or omitted to do." Marriage of K.E.V., 883 P.2d at 1252 (citing Norman v. State (1979), 182 Mont. 439, 443-44, 597 P.2d 715, 718) (emphasis added). Because the imposition of equitable estoppel is premised on a misrepresentation of fact, it is inapplicable when, as here, the conduct complained of consists solely of legal representations. While this Court has not had occasion before to clearly articulate the inapplicability of equitable estoppel to purely legal acts, such a conclusion was implicit in decisions such as Marriage of K.E.V., Minervino, and State .v Anderson (1993), 258 Mont 510, 853 P.2d 1245.

In this case, the Landowners assert that, when asked, Park County represented to them that the one-party deeds were legal documents. They further assert that the county then allowed the Landowners to file the deeds and to pursue private third-party sales in reliance

on the deed's purported validity. These actions, however, do not constitute a misrepresentation of a material fact; rather, they constitute Park County's legal opinion that the deeds were valid. While this might constitute an inadvertent misrepresentation of the law, it does not constitute a misrepresentation of fact.

In addition, equitable estoppel also requires that the complaining party must have no knowledge of the truth of the facts which it claims were misrepresented to it. We have held, however, that the complaining party must lack not only the actual knowledge itself, but also lack "a readily available means of knowledge as to the true facts." Harbeck v. Orr (1981), 192 Mont. 243, 250, 627 P.2d 1217, 1221 (citations omitted). Moreover, the doctrine of equitable estoppel will not be applied where both parties have the same opportunity to determine the truth of the facts at issue. Chemical Bank v. Washington Public Power Supply System (Wash.1984), 691 P.2d 524, 542.

Knuchel, a practicing attorney, represented the Landowners at the informal meetings with the representatives of Park County. Yet rather than asking their own counsel to formulate a legal opinion regarding the validity of the one-party deeds, the Landowners instead chose to rely on the opinion of the Park County Attorney. The was no reason to assume that the attorney for Park County possessed any specific knowledge of the amended Act which was not also known to, or discoverable by, the attorney for the Landowners. Both parties were equally able to perform the necessary legal analysis to discover the validity and applicability of the amended Act. Because both parties were equally able to determine the

truth of the facts asserted, the third element necessary to prove equitable estoppel is lacking.

Since the Landowners cannot prove each and every necessary element, the doctrine of equitable estoppel is inapplicable in this case.

The order of the District Court is affirmed.

Justice

We Concur:

Justices