No. 86-433

IN THE SUPREME COURT OF THE STATE OF MONTANA

1987

_____

IN RE THE ADOPTION OF
J.M.G., J.J.G., and C.C.G.

_____

APPEAL FROM: District Court of the Nineteenth Judicial District,
In and for the County of Lincoln,
The Honorable Robert M. Holter, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Measure, Ogle & Ellingson; Darrell S. Worm, Kalispell,
Montana

For Respondent:

William A. Douglas, Libby, Montana

_____

Submitted on Briefs: March 26, 1987

Decided: May 13, 1987

Filed: MAY 13 1987

_____
Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

The natural father of J.M.G., J.J.G., and C.C.G., appeals the June 10, 1986, judgment of the Nineteenth Judicial District Court, County of Lincoln, terminating the parental rights of the natural father and granting adoption to the stepfather. We affirm.

The natural father and natural mother were married in 1975. Three children were born of the marriage. The parties' marriage was dissolved on March 4, 1983, and the natural mother awarded custody of the children. The natural father moved to Oregon while the natural mother and children remained in Libby, Montana.

On April 7, 1983, the natural father was charged with custodial interference, a felony, and subsequently was incarcerated on the charge from July 18, 1983, to September 7, 1983. The natural father spent three days of this period at St. John's Hospital in Libby for treatment of anxiety and psychosis. On October 11, 1983, the natural father entered a guilty plea to the charge of custodial interference and received a two year deferred imposition of sentence.

The natural mother was remarried to S.A. May 5, 1984. On September 11, 1984, S.A. filed a petition to adopt J.M.G., J.J.G., and C.C.G. In the petition, S.A. alleged that pursuant to § 40-8-111(1)(a)(v), MCA, the natural father's consent was not required due to his failure to provide child support during the year preceding the filing of the petition. Following the natural father's failure to appear the District Court granted the adoption on October 24, 1984. This decree was subsequently set aside and the District Court ordered that the matter be set for trial following discovery.

The matter came on for hearing March 26, 1986. Testimony was heard from the natural father and his mother, the

natural mother, and a former attorney for the natural father. The parties did not dispute the fact that the natural father did not provide any support to his children during the period in question, September 11, 1983, through September 11, 1984. The natural father testified that he was physically and mentally incapable of working at that time. He had injured his knee in 1981 while working as a logger and was still unable to perform heavy labor. A workers' compensation settlement of $9500 was received by the natural father in July, 1983, which he gave to his mother and $2400 was applied to child support.

The natural father and his mother testified that his major problems during that period were psychological. He was taking thorazine, an antidepressant, and expressed suicidal ideas, had trouble sleeping, and his mother felt he was not competent to be left alone. The natural father assisted his mother in her sign business but his only compensation was room and board. The natural father did not perform any remunerative work until 1985. Up to that time his mother felt he was incapable of performing simple tasks.

David Harmon, the natural father's attorney during 1983 and early 1984, testified that conversing with the natural father during his incarceration was useless due to his anxiety and paranoia. However, the natural father's mental condition improved greatly following his release from jail. Harmon represented the natural father at hearings during October and November of 1983, and found him to be capable of discussing his legal problems. Harmon did not consider the natural father to be mentally impaired at that time, but found him to be obsessed with the possibility that his children might be taken away from him.

The natural mother testified that the natural father visited with the children in November, 1983, and exhibited no

signs of mental problems. The natural mother further testified that following the natural father's knee injury he had performed some photography work, raised chickens which involved carrying heavy bags of feed and 5 gallon buckets, plus he jogged on a daily basis.

The District Court entered its findings of fact, conclusions of law and judgment June 10, 1986. The court found the natural father's consent to adoption to be unnecessary for failure to provide child support from July 11, 1983, through July 3, 1985, and granted the adoption. The natural father appeals and raises the following issues:

1) Whether there is substantial credible evidence supporting the termination of the natural father's parental rights?

2) Whether the District Court committed reversible errors of law in admitting certain evidence and in entering a decree of adoption?

The natural father contends several of the District Court's findings of fact are not supported by substantial evidence. Specifically, the natural father takes issue with the findings of the court that his emotional problems were best characterized as self-induced, that a portion of his lump sum settlement should have been applied toward child support, that he was able to maintain employment but did not by choice, and that he has voluntarily chosen a lifestyle to avoid gainful employment while allowing others to support him. We find substantial credible evidence in the record to support these findings.

The natural father was released from jail pending trial on the custodial interference charge. The release was due to his medical condition. The hospital record shows a final diagnosis of acute psychosis and anxiety but also contains a notation by one of the examining physicians that the natural

4

father's condition might have been an act. The testimony of his former lawyer and the natural mother indicate that following release from incarceration the natural father was experiencing some anxiety but was not impaired in any manner.

The natural father asserts that his testimony as well as his mother's compel a finding that he was not mentally able to hold a job from September 11, 1983, to September 11, 1984. However, the natural father has offered no medical evidence of his condition during that period and admits that he did not visit any physicians or psychologists in regard to his alleged condition. Evidence concerning the natural father's mental condition during the year in question consisted solely of non-medical testimony. In a non-jury trial witness credibility and the weight of the testimony are matters to be determined by the District Court and we will not substitute our judgment for that of the District Court. Kuhlman v. Rivera (Mont. 1985), 701 P.2d 982, 986, 42 St.Rep. 863, 868.

In this instance, the District Court relied on testimony that the natural father was not mentally impaired in determining that the natural father did not work by choice. We will not substitute our judgment for that of the district judge. Substantial evidence supports his conclusion.

Section 40-8-111(1)(a)(v), MCA, provides that the consent of the natural father is not required for adoption, "if it is proven to the satisfaction of the court that the father . . ., if able, has not contributed to the support of the child during a period of 1 year before the filing of a petition for adoption." This Court has previously held that the question of ability to pay child support also encompasses the ability to earn income and the desire to earn it. Matter of Adoption of B.L.P. (Mont. 1986), 728 P.2d 803, 43 St.Rep. 2116.

5

In the present case, the District Court found that the natural father should have applied his lump sum settlement to child support. The record reflects he paid $2400 out of the $9500 settlement to clear up child support arrearage, but the remainder was given to his mother who spent it. We find no abuse of discretion in the court's determination that this money should have been applied to child support.

The District Court found that the natural father voluntarily chose a lifestyle to avoid gainful employment while allowing others to support him. The court further found that the natural father did not have any income from September, 1983, to December, 1984, and that he did not pay child support for a period of two years. Each of these findings is supported by the record. The natural father testified he wasn't capable of doing anything the first four or five months after his release from jail in September, 1983, yet he failed to make any serious efforts at obtaining employment and did not find remunerative employment until December of 1984. We agree with the District Court that the natural father was capable of maintaining regular employment but did not.

The second issue is whether the District Court committed reversible errors of law in admitting certain evidence and in entering a decree of adoption. The natural father contends the court erred in receiving evidence of events before and after the one year period preceding the filing of the adoption petition and permitting questions concerning the natural father's homosexuality. We find no reversible error in the court's admission of evidence.

The primary question before the District Court was the natural father's ability to work during the year in question. Evidence concerning events outside of that one year period were relevant as to the natural father's mental and physical

condition during the subject year. The natural father's knee injury in 1981 and his activities thereafter including jogging, raising chickens, and performing photography, all related to the question of his physical condition.

The natural father's relationships with others were relevant as to his emotional and mental condition. The natural father claims he was mentally incapable of regular employment from September, 1983, through September, 1984. The District Court permitted testimony that following that year the natural father did find employment yet he still relied on others to support him. There is no indication that evidence of the natural father's homosexuality prejudiced him in any manner. The record supports the court's finding that the natural father has voluntarily chosen a lifestyle which permits him to avoid gainful employment while allowing others to support him.

The natural father contends that there should have been a two-step hearing process. First, a hearing as to terminating the natural father's parental rights, second, a hearing concerning fitness of the adoptive father and the best interests of the children. The record indicates the second step did occur but there is no transcript in the record.

The District Court granted the petition for adoption based upon its findings that the adoptive father is a fit and proper person to be allowed care and custody and that the adoption is in the best interests of the children. The natural father contends the decree of adoption was entered prematurely and is not supported by substantial evidence.

The record shows a hearing was held October 22, 1984, concerning the petition to adopt. The District Court granted the adoption finding it to be in the best interests of the children and the stepfather to be a fit and proper parent. The decree of adoption was subsequently set aside to allow

the natural father to appear in the proceedings to determine whether the natural father had abandoned the children. There is no indication the stepfather's fitness to be an adoptive parent and the best interests of the children was relitigated.

Rule 9(b), Mont.App.R.Civ.P. provides in pertinent part:

> In all cases where the appellant intends to urge insufficiency of the evidence to support the verdict, order or judgment in the district court, it shall be the duty of the appellant to order the entire transcript of the evidence. Wherever the sufficiency of the evidence to support a special verdict or answer by a jury to an interrogatory, or to support a specific finding of fact by the trial court, is to be raised on the appeal by the appellant, he shall be under a duty to include in the transcript all evidence relevant to such verdict, answer or finding.

The appellant natural father has not provided the entire transcript of the proceedings of the October 22, 1984, hearing concerning the original petition to adopt. Therefore we will not address whether substantial evidence supports the finding that adoption by the stepfather is in the best interests of the children.

The District Court judgment is affirmed.

Justice

We Concur:

Chief Justice

L. C. Gulbrandson,

William E. Huneck

Justices