No. 86-580

IN THE SUPREME COURT OF THE STATE OF MONTANA

1987

_____

IN THE MATTER OF THE ADOPTION OF
R. G. C., a minor child.

_____

APPEAL FROM: District Court of the Eleventh Judicial District,
In and for the County of Flathead,
The Honorable Leif Erickson, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Robert Stafford, pro se, Navato, California
Carol Ann Henderson Owen, pro se, Missoula, Montana

For Respondent:

Murphy, Robinson, Heckathorn & Phillips; Donald Murray,
Kalispell, Montana
Hash, O'Brien & Bartlett; James C. Bartlett, Kalispell,
Montana

_____

Submitted on Briefs: Aug. 6, 1987

Decided: September 15, 1987

Filed: SEP 15 1987

*Ethel M. Harrison*

Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

R.L.S., the putative father of R.G.C., appeals an order of the District Court of the Eleventh Judicial District. That court ruled his consent would not be required to an adoption of the seven-year-old boy because he had never supported the child, § 40-8-111(1)(a)(v), MCA, and that the adoption would be in the best interests of the child, as defined by § 40-6-130, MCA. R.L.S., acting pro se, argues that the court failed to consider his fitness as a parent before determining what was best for the child. We find no error; the child's best interest is paramount to any concern by R.L.S. We affirm the District Court.

R.L.S. and C.A.C. had a relationship in 1979 in which they had sexual intercourse twice. Several months later C.A.C. told R.L.S. that she was pregnant but did not seek support. The baby was born out of wedlock on July 20, 1980. Although R.L.S. was in Montana until December 1980, he claims he never knew of the child's live birth until October 1984 when O.K. and L.K., husband and wife, asked him to consent to their adoption of the boy. O.K. and L.K. had obtained C.A.C.'s consent but R.L.S. refused to give his consent. Thus, they resorted to legal action to terminate R.L.S.'s parental rights and to establish that his consent was not needed because he had never provided support for the child.

R.L.S. has failed to supply this Court with a complete transcript of the District Court proceedings as required by Rule 9(b), M.R.App.Civ.P. According to that rule:

> Wherever the sufficiency of the evidence to support . . . a specific finding of fact by the trial court is to be raised on the appeal by the appellant, he shall be under a duty to include in the

2

> transcript all evidence relevant to such
> . . . finding.

Where an appellant fails to produce the entire transcript, this Court will not address whether substantial evidence exists to support the appellant's factual claims. Matter of Adoption of J.M.G. (Mont. 1987), 736 P.2d 967, 970, 44 St.Rep. 869, 873. In this case we shall view the District Court's findings of fact as true and consider only that court's application of the law to those facts.

The District Court determined that C.A.C. delivered custody of the boy to O.K. and L.K. in August 1984, so that the boy could live with them and be adopted by them; C.A.C. subsequently signed the appropriate adoption forms and was later determined by a District Court to have done so knowingly and voluntarily. When O.K. and L.K. took the boy, he was not well nourished, all his belongings were in one box, and he was introverted and untrusting of adults. Since he has been with O.K. and L.K., he has become well nourished and happy and refers to them as his parents; there has been a tight family bonding. The boy also has done well in school, receiving a certificate that honored him as the child with the best attitude in his kindergarten.

The court interviewed the boy. He told of living in motels and cars with C.A.C. He stated that he preferred to stay with O.K. and L.K. even though he realized C.A.C. was his natural mother. The boy now addresses O.K. and L.K. as his father and mother; they have provided the boy with a clean, comfortable, and suitable home.

The court found that R.L.S. was aware of C.A.C's pregnancy, but never bothered to inquire as to the birth of the child or to provide any support for the child. R.L.S. had never seen the boy before this trial. R.L.S.'s objective in this action is not to obtain custody of the boy, but to

3

return the boy to C.A.C. He would take custody of the boy, however, if the court denied custody to C.A.C.

Considering all this evidence, which this Court assumes as true in this appeal, the District Court found that it would be in the boy's best interests to remain with O.K. and L.K. It terminated R.L.S.'s parental rights under § 40-6-130, MCA, and determined that his consent to the boy's adoption under § 40-8-111(1)(a)(v), MCA, was not required. The District Court then issued an interlocutory decree of adoption.

On appeal, R.L.S. contends the District Court erred by considering the best interests of the child while not considering R.L.S.'s fitness as a father. He also argues that the District Court erred in its application of § 40-8-111(1)(a)(v), MCA, since that section requires a petition for adoption to have been filed before a court can determine that the parent's consent is not required.

The District Court's initial question in a case such as this is whether the consent of the putative father is needed to effect the adoption. If it determines that the putative father's consent is not required, then the court's foremost duty is to determine what the subject child's best interests are. Matter of Adoption of S.T.V. (Mont. 1987), 733 P.2d 841, 842, 44 St.Rep. 425, 427; Matter of Adoption of Smigaj (1977), 171 Mont. 537, 539, 560 P.2d 141, 143. Our review indicates that the District Court ruled that the putative father's consent was not needed because he had failed to support the child. It then determined that adoption would be in the boy's best interests. We see no error.

R.L.S. argues that § 40-6-130(1), MCA, sets a standard for review that the District Court ignored. That section reads:

4

> If the putative father appears at the
> hearing and requests custody of the
> child, the court shall inquire into his
> fitness and his ability to properly care
> for the child and shall determine whether
> the father's parental rights should be
> given recognition in view of his effort
> or lack of effort to make provision for
> the mother while she was pregnant and for
> the child upon birth. . . . If the court
> finds that it would not be in the best
> interests of the child to grant custody
> to the putative father, the court shall
> terminate his rights to the child.

R.L.S. argues that this section requires a finding by the
District Court as to the putative father's fitness as a
parent before the court determines what result would be best
for the child. To add credence to this argument, R.L.S.
cites Matter of Doney (1977), 174 Mont. 282, 570 P.2d 575, as
authority for his argument that petitioners must show him to
be an unfit parent. It is apparent that R.L.S. misconstrues
Montana law since Doney was a question of guardianship, not
one of adoption. Doney, 570 P.2d at 577. Additionally, this
Court in Matter of M.G.M. (1982), 201 Mont. 400, 654 P.2d
994, said that proof of abuse or neglect was required to
terminate a natural parent's rights in a
youth-in-need-of-care proceeding. In M.G.M., the Court
specifically distinguished adoption proceedings and said that
in adoption proceedings it is proper for the District Court
to look at the child's best interests. Section 40-6-130,
MCA, which speaks directly to the best interests of the
child, was held to apply strictly to adoption proceedings.
M.G.M., 654 P.2d at 997.

The proper test under § 40-6-130(1), MCA, and the one
employed by the District Court in this case, is the best
interests of the child. The child's welfare is of utmost
importance; termination of a putative father's rights to the

5

child does not depend on the factors of abuse or neglect that are so crucial in guardianship cases. Where the District Court concludes, as it did here, that the child's best interests are not in the putative father, then a plain reading of § 40-6-130(1) makes it abundantly clear that the putative father loses his rights to the child. We can discern no error in the District Court's handling of this issue.

R.L.S. then argues that the District Court erred in its application of § 40-8-111, MCA, which sets out the requirement of the natural parents' consent in adoption cases.

Section 40-8-111(1)(a)(v), MCA, states:

> (1) An adoption of a child may be decreed when there have been filed written consents to adoption executed by:
>
> (a) both parents, if living, or the surviving parent of a child, provided that consent is not required from a father or mother:
>
> . . .
>
> (v) if it is proven to the satisfaction of the court that the father or mother, if able, has not contributed to the support of the child during a period of 1 year before the filing of a petition for adoption.
>
> . . .

R.L.S. argues that this section was used to determine that his consent to the adoption was not necessary. He argues that the section does not apply to him, though, because it requires that a petition for adoption has been filed, and no petition had been filed in October 1984, when he was asked for his consent. R.L.S. has never paid any support to or

6

for R.G.C., the minor boy. His contention is that a formal petition would have put him on notice of the proceeding, thus allowing him to make support payments. "A statute should not be interpreted in favor of a father who seeks the benefit of parental rights but shuns the burden of parental obligations." In re Burton's Adoption (Cal. 1956), 305 P.2d 185, 191; Matter of Adoption of S.L.R. (1982), 196 Mont. 411, 415, 640 P.2d 886, 888; Matter of Adoption of B.L.P. (Mont. 1986), 728 P.2d 803, 805, 43 St.Rep. 2116, 2119. This statute will not be read to R.L.S.'s advantage.

The putative father's argument is a circuitous one, which, if adopted, would obliterate the statute. Consider the circumstances attendant in this case: O.K. and L.K. sought the consent of R.L.S. in October 1984 to adopt R.G.C. but he refused; O.K. and L.K. filed a petition for adoption on August 29, 1985; the District Court dismissed that petition as premature on October 8, 1985 since R.L.S.'s rights had not been terminated; the District Court decided on September 23, 1986, that R.L.S.'s consent was not required under § 40-8-111(1)(a)(v), MCA. To accept the putative father's argument would allow any natural parent to thwart a legitimate adoption proceeding merely by refusing his or her consent so that no valid petition for adoption could be filed. This would serve only to vitiate the statute.

The putative father cites Brost v. Glasgow (1982), 200 Mont. 194, 651 P.2d 32, as support for his argument. That case merely requires separate findings on the issues of the need for the parent's consent aside from findings on the merits of the adoption. Brost, 651 P.2d at 37. The District Court met that requirement.

O.K. and L.K. began an adoption proceeding under § 40-8-109, MCA, one aspect of which was the paternity issue. In such proceedings, the one-year period of support

7

provisions made for the child should be measured against the commencement of the <u>adoption proceedings</u> under § 40-8-109, MCA, rather than against the <u>date of the petition</u> for adoption. This rule violates no sense of reasonableness and promotes the intent of the legislature as derived from the statutory scheme it enacted. Statutes should not be construed absurdly when a reasonable construction is possible. Darby Spar, Ltd. v. Department of Revenue (Mont. 1985), 705 P.2d 111, 113, 42 St.Rep. 1262, 1264.

Our review shows that the District Court proceeded properly when it determined that consent of the putative father was not required. It then determined the best interests of the child and issued the appropriate orders. Such actions comply with the law in Montana.

> The child's best interest is one of the most important factors to be considered in determining whether a petition to adopt should be granted . . . Once the statutory requirements for consent to an adoption are met (§ 40-8-111, MCA), the best interest of the child becomes the paramount consideration.

<u>S.T.V.</u>, 733 P.2d at 842.

The District Court considered the question of the putative father's consent. It determined it was not needed because the putative father had never paid any financial support for the child. Thereafter, the District Court need only determine the child's best interest. It did this and issued an interlocutory decree of adoption for O.K. and L.K.

We will not disturb this judgment. The District Court is affirmed.

_____
Justice

8

We concur:

_____
Chief Justice

_____

_____

_____
Justices

9