No. 89-561

IN THE SUPREME COURT OF THE STATE OF MONTANA

1990

IN THE MATTER OF THE ADOPTION
OF D.J.V.

APPEAL FROM:   District Court of the Ninth Judicial District,
               In and for the County of Pondera,
               The Honorable McPhillips, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

                Chris Christensen, Keil & Christensen, Kalispell,
                Montana

        For Respondent:

                Scott O. Swanson, Pendroy, Montana

                                Submitted:   May 5, 1990

                                Decided:   August 20, 1990

Filed:

                                            Clerk

Justice John C. Sheehy delivered the Opinion of the Court.

This appeal involves an adoption proceedings held in the Ninth Judicial District, Pondera County. Appellant, Kent Keil, the natural father and respondent below, appeals the July 5, 1989 order and decree terminating his parental rights and granting the adoption of his son, D.J.V., by D.J.V.'s stepfather, Albert Blockeel, Jr. The District Court ruled that the natural father's consent was not required for the adoption because he failed to provide support for his son for a period of one year before the filing of the petition for adoption. We affirm the District Court's order and decree.

The natural father raises the following issue on appeal:

**Did the District Court err in finding that the natural father's consent to the adoption of D.J.V. was not required because the natural father did not contribute to the support of D.J.V. during a period of one year before the filing of the petition for adoption?**

D.J.V. was born on September 2, 1987, in Choteau, Montana. In 1986, Carolyn Vandenbos (Carolyn), a 17 year-old junior in high school, began dating Kent Keil (Kent), a college student at Montana State University. In January of 1987, Carolyn discovered that she was pregnant with Kent's child; at that time, Kent broke off their relationship.

Upon discovering Carolyn's pregnancy, Kent's parents, Dale and Sheri Keil, took an active interest in Carolyn's welfare. They

2

arranged for her to receive counseling. Kent attended one of these sessions, and apparently drove Carolyn home from another, but otherwise did not take part in the counseling sessions.

After D.J.V. was born, Dale and Sheri visited several times with the baby in their home. Kent did not see his son until two months after the birth, when Carolyn's cousin arranged a half hour visit. According to Carolyn, Kent held the baby, but did not appear to take a great deal of interest in him.

On another occasion, Kent happened to arrive at his parent's home when Carolyn and D.J.V. were visiting, and two photographs were taken of Kent and the child. The parties disagree on how many more times Kent visited with his son. Carolyn remembers only two occasions in which Kent saw D.J.V., whereas Kent testified that he saw his son at least five or six times. Testimony from the parties also differs whether Kent attempted to pay any of Carolyn's medical expenses. Carolyn claims Kent never offered or paid any of her medical expenses during the pregnancy. In contrast, Kent claims that he specifically requested Carolyn to supply him with the medical bills so that he could pay them. Despite this offer by Kent, the record reveals that Kent failed to pay any of Carolyn's and D.J.V.'s medical expenses.

Kent appears from the record to be a rather prosperous young man. He estimates his net worth as being $200,000 and he also expects a substantial inheritance. Despite his wealth, Kent has not paid anything toward the support of his child. He has given no clothes or gifts of any kind to the boy.

3

In January of 1988, the petitioner, Albert Blockeel, Jr. (Albert), began dating Carolyn. By August, they had decided to marry. As part of their marriage plans, they wished to have D.J.V. adopted by Albert. At the suggestion of their lawyer, Jim Obie, and Dale Keil, who was acting as his son's lawyer, Carolyn and Albert met with Kent and his new wife, Lisa, to discuss the possibility of Kent giving his consent to the adoption. Kent refused to consent to the adoption, and inquired whether Carolyn and Albert wanted child support. The subject of visitation also surfaced. Albert invited Kent and his wife to come to their house at anytime; Kent, however, chose not to take advantage of Albert's invitation to see D.J.V.

Later, Carolyn and Albert were married on October 28, 1988, and on February 21, 1989, Albert filed a petition for adoption. After a hearing on April 17, 1989, the District Court ruled that Kent's consent was not required, under § 40-8-111(1)(a)(v), MCA, since Kent failed to contribute to his son's support for a period of one year prior to the filing of the petition for adoption.

The central issue in this appeal involves the District Court's application of the adoption statute, § 40-8-111, MCA. Section 40-8-111(1), MCA, generally requires the filing of written consents in an adoption proceeding. However, consent for the adoption is not required from a father or mother:

> (v)  if it is proven to the satisfaction of the court that the father or mother, if able, has not contributed to the support of the child during a period of 1 year before the filing of a petition for adoption . . ..

4

Section 40-8-111(1)(a)(v), MCA.

Accordingly, a father's rights may be terminated, and an adoption decreed without that parent's consent upon a showing of nonsupport under § 40-8-111(1)(a)(v), MCA. In re the Adoption of R.M. (Mont. 1990), 785 P.2d 709, 711, 47 St.Rep. 124, 127.

As we have previously held, "Parental rights involve a fundamental liberty interest, and a judicial decree terminating such rights must be supported by clear and convincing evidence." R.M., 785 P.2d 711; In re the Adoption of C.R.D. (Mont. 1989), 782 P.2d 1280, 1282; Matter of R.B. (1985), 217 Mont. 99, 102-103, 703 P.2d 846, 848, citing Santosky v. Krommer (1982), 455 U.S. 745, 753-54, 102 S.Ct. 1388, 1394-1395, 71 L.Ed.2d 599, 606. It is a fundamental principle of law, however, that parental rights do not exist without concomitant obligations. As the District Court properly noted, "It is the public policy of the State of Montana that the statutes concerning the termination of parental rights should not be interpreted in favor of those who shun the burden of parental obligations." In re Burton's Adoption, 147 Cal.App.2d 125, 305 P.2d 185, 191; In re the Adoption of S.L.R. (1982), 196 Mont. 411, 415, 640 P.2d 886, 888; In re the Adoption of B.L.P. (1986), 224 Mont. 182, 186, 728 P.2d 803, 805; In re the Adoption of R.G.C. (1987), 228 Mont. 345, 349, 742 P.2d 471, 474.

As the District Court notes, the central issue in this case is whether Kent has contributed to the support of D.J.V. during a period of one year before the filing of the petition. The District

Court found Kent had failed to pay any support, and therefore his consent was not needed under § 40-8-411(1)(a)(v), MCA.

Kent argues that because there was no court order requiring him to pay child support, the District Court cannot terminate his parental rights pursuant to § 40-8-111(1)(a)(v), MCA. Furthermore, Kent contends that virtually all of the Montana cases decided under § 40-8-111(1)(a)(v), MCA, involve court-ordered child support. Kent is correct; most of the adoption cases under the statute involve court-ordered support; however, a parent's obligation to his child is not dependent on an order of the court. Section 40-6-211, MCA. There is no requirement under § 40-8-111(1)(a)(v), MCA, that the child support be court-ordered. If the father has provided no support during the one year period prior to the filing of the petition for adoption and the father is able to provide support, then consent is not required. The absence of a child support order does not absolve Kent of his legal duty to support his child.

Next, Kent argues that his parental rights should not be terminated because he made an offer concerning support at a meeting in the Keg Restaurant in Conrad, Montana. At the meeting, Carolyn and Albert met with Kent and his new wife, Lisa, to discuss Albert adopting D.J.V. At the meeting, Kent asked Carolyn if she needed support, and she refused. According to Kent, this offer showed his willingness to pay the support, and thus his rights should not be terminated under § 40-8-411(1)(a)(v), MCA. We disagree, and adopt the District Court's reasoning set forth in its memorandum:

6

This Court agrees with the Petitioner that, at most, the discussion which occurred during July or August of 1988 was a mere inquiry concerning support which was insufficient to exempt the father from the requirements of § 40-8-111, MCA. The discussion took place one year subsequent to the birth of the child. There was no promise or offer to pay any child support for the preceding year. There was not a promise or offer to pay any of the expenses of the pregnancy or delivery. There was no specific dollar amount of future child support. No checks were written. No trust account was set up for the child. No health insurance policy was provided for the child. The father merely inquired of the Petitioner whether or not she wanted any support to be paid. The Petitioner, who was not yet married to the child's mother, answered "no." The father has not ever actually contributed any money whatsoever to this child's support or ever made a specific offer of child support.

In the past, this Court has strictly upheld the child support requirements under § 40-8-111, MCA. In in re the Adoption of R.A.S. (1984), 208 Mont. 438, 679 P.2d 220, the father had paid the sum of $450.00 child support during the one year period immediately preceding the filing of the petition for adoption. However, this payment was properly attributable to a child support obligation which had accrued prior to the one year period preceding the filing of the petition for adoption. Therefore, the requirement of support during the one year period before the filing of the adoption petition was not met and the father's consent to the adoption was not required. R.A.S., 679 P.2d at 223, 224. If actual payment of some child support, under R.A.S., does not toll the running of § 40-8-111(1)(a)(v), MCA, then Kent's mere inquiry regarding child support is surely insufficient to toll the statute.

It is uncontroverted that Kent has not contributed financial support to D.J.V., in the preceding one year or at any time. By

7

Kent's own admission, he has not paid any expenses of Carolyn's pregnancy or hospitalization, or any child support since the birth of D.J.V. This is not a case where the father is suffering financial hardship. Thus, there is ample "clear and convincing evidence" to support the District Court's termination of Kent's parental rights.

Finally, Kent argues the doctrine of equitable estoppel should preclude petitioner (Albert) from asserting that Kent failed to pay child support. According to Kent, both Albert and Carolyn cleverly refused his "offer" of child support at the Keg Restaurant, in order to later assert at the adoption proceeding that Kent's consent was not necessary. Kent claims that Albert and Carolyn should not be allowed to induce him to forego making child support payments, and then utilize § 40-8-411(1)(a)(v), MCA, which deprives Kent of his parental rights for his failure to pay child support.

Equitable estoppel is a principle of equity, Cremer v. Cremer Rodeo Lands and Livestock Co. (1979), 181 Mont. 87, 93, 592 P.2d 485, 489, used to promote justice, honesty, fairdealing and to prevent injustice. Keneco v. Cantrell (1977), 174 Mont. 130, 135, 568 P.2d 1225, 1228. Furthermore, the object of equitable estoppel is to prevent a party from taking advantage of his own wrong while asserting his strict legal right. Matter of Shaw (1990), 189 Mont. 310, 316, 615 P.2d 910, 915. We cannot adopt Kent's argument of equitable estoppel. Carolyn has done no wrong giving rise to estoppel. Since the birth of D.J.V., Kent has not performed his legal responsibility as a parent. Equitable estoppel is

8

unavailable to Kent in this case. We affirm the District Court order.

_____
                    Justice

We Concur:

_____
        Chief Justice

_____

_____

_____
            Justices

9