JUSTICE HARRISON
delivered the Opinion of the Court.
This is an appeal from the Eighteenth Judicial District Court, Gallatin County. The District Court granted the adoptive father’s petition to allow the adoption of J.M.H. and S.B.H. (the children) to proceed without the natural father’s consent. The court further concluded that the natural father was able to pay child support, but failed to do so. The natural father appeals the District Court’s ruling on the consent issue and the court’s denial of a continuance of the May 11, 1993, “best interest” hearing. We affirm.
The issues are:
1. Did the District Court err by finding that the natural father, though able, failed to pay child support?
2. Did the natural father waive his right to be present at the May 11,1993, “best interest” hearing?
Natural father, John Heikkila (John), and natural mother, Karen Beth Sorensen (Karen), were married in 1983 while attending Montana State University in Bozeman, Montana. After the birth of their first daughter, the couple moved to Colorado so that John could attend veterinary school. The couple’s second daughter was bom in 1986. In July 1987, before John graduatedfrom veterinary school, the couple separated. The marriage was dissolved in Colorado on December 28,1988.
The final decree of dissolution addressed, among other things, matters of child custody, visitation, child support and marital debts. John and Karen were awarded joint custody of the children. Karen was named the primary physical custodian. The parties agreed that Karen and the children would return to Montana. John was granted “liberal and generous visitation” in Montana. He was also granted up to ten days of visitation per summer in Colorado, so long as John’s sister escorted the children.
The Colorado court also ordered John to pay child support of $200 per month, less than the amount required by Colorado’s Child Support Guidelines, due to his student status. Visitation and the monthly *383 child support payments were to be renegotiated after John’s graduation from veterinary school or upon securing full-time employment.
Karen returned to Bozeman after the dissolution. While there, she met Timothy Lee Barth (Tim). They were married on December 22, 1990. In May 1990, John graduated, became licensed, and secured a position as a veterinarian in Colorado. Despite the Colorado court’s order, John and Karen never renegotiated visitation and child support.
While John paid $2,050 in child support over the years, he still owes $10,600 in back payments. John’s total debts, including sizable student loans, are about $70,000. John’s tax returns indicated that in 1990, the year he graduated and worked for six months, he earned approximately $15,000. In 1991, he earned $31,367, and in 1992, $32,400.
Two years after Tim and Karen were married, Tim sought to adopt the children. John made numerous attempts to delay and prevent Tim’s adoption of his children. Tim’s petition to the Eighteenth Judicial District Court stated in part:
Since the marriage between KAREN BARTH and the Petitioner, TIMOTHY LEE BARTH, both minor children have resided with the above parents as their natural child[ren].
The Petitioner desires to adopt [J.M.H.] and [S.B.H.] as his own children, to be treated in all respects as if they were the natural children of the Petitioner, to take the family name of BARTH, ... and be entitled to the support, affection and inheritance of the Petitioner in all respects establishing the relationship of parent and child between the Petitioner and [the children].
The court set an adoption hearing for May 11, 1993. In an effort to prevent this hearing, John filed a petition for writ of mandamus with this Court. John’s petition was denied on May 11, 1993 — the same day that the District Court made its findings of fact, conclusions of law and final decree of adoption, granting Tim’s request. John appeals. We affirm.
I
Did the District Court err by finding that the natural father, though able, failed to pay child support?
During the period in which he accrued child support arrearages, John chose to repay his general creditors rather than fulfill his child support obligation. Karen, on the other hand, returned to Montana, where she attended and graduated from Montana State University. *384 At the time she graduated, Karen owed her parents more than $10,000. Her financial situation was compounded because, during most of that period, she was not receiving her $200 monthly child support payments.
John testified that prior to the dissolution, Karen received money from a trust fund established for Karen’s use by her parents. John believes the fund is valued at $60,000 to $70,000, and it largely supported the couple in Colorado. After Tim and Karen were married, with the exception of a two-month period in which John sent $250 in child support, Tim financially supported Karen and the children.
John contends that before and since his graduation in May 1990, he was too poor to make any payments other than those he made. He asserts that he only earned $23,444 after taxes, and had expenses of $24,220, in 1990. John argues that he has: juggled student loans and debts of $72,000; enjoyed no luxuries; no health insurance; no savings; no television; no boat; no snowmobile; one credit card through a gas company; and at one point, he even lost electrical service to his home due to a delinquent bill.
John claims to have a fundamental right — specifically, a liberty interest — in his children, which prevents anyone from “taking” his children without his consent. See § 48-8-111(1), MCA. John asserts that Tim, who wishes to adopt his children, must establish by clear and convincing evidence that John was able to contribute to the support of the children the year before Tim filed the adoption petition.
He argues that Montana law requires strict compliance with the statute that the burden of proof rests with Tim. John contends that he presented overwhelming evidence of his inability to pay during the period in question; that Tim presented no evidence of John’s failure to pay; and that Tim failed to meet his burden of proof. Because no clear and convincing evidence exists that he was able to pay support, John argues that the District Court’s decision must be reversed.
In support of his contention, John refers this Court to § 40-8-111(1), MCA, which provides in pertinent part:
Consent required for adoption. (1) An adoption of a child may be decreed when there have been filed written consents to adoption executed by:
(a) both parents, if living, or the surviving parent of a child, provided that consent is not required from a father or mother:
*385 (v) if it is proven to the satisfaction of the court that the father or mother, if able, has not contributed to the support of the child during a period of 1 year before the filing of a petition for adoption;
The issue in dispute at the November 20,1992, hearing was John’s ability to pay. John argues that the burden of proving his ability to pay during the year prior to the filing of the petition lies with Tim. Adoption of S.L.R. (1982), 196 Mont. 411, 640 P.2d 886, 889. Tim met this burden by showing that John earned about $24,000 after taxes, paid $8,376 in student loans, and made payments to other general creditors, including his divorce lawyer. The District Court concluded that, although he was able to pay, he did not contribute to the support of his children in the year before Tim filed the adoption petition. In so finding, the court determined that John’s consent to the adoption was not required.
We will not overturn a district court’s findings unless they are clearly erroneous. Rule 52(a), M.R.Civ.P.; Adoption of B.L.P. (1986), 224 Mont. 182, 728 P.2d 803. This Court has “long adhered to the standard of review which provides that we will consider only whether substantial credible evidence supports the findings and conclusions of the trial court.” B.L.P., 728 P.2d at 805 (citation omitted).
In B.L.P., this Court enunciated this standard of review in discussing whether the appellant was able to make support payments during the year immediately prior to the date the adoption petition was filed. John refers to the “clear and convincing” standard, which is applicable to the evidence presented at the district court level. However, it is unnecessary that this Court retry the facts under the “clear and convincing” standard. Rather, we review the district court’s findings under the clearly erroneous and substantial credible evidence standards.
At the November 22nd hearing, when asked if he chose to repay creditors rather than pay child support, John stated:
It hasn’t been in preference. They are not more important than my daughters, but it has been paid more out of necessity. I am aware that Karen and Tim are not in need of the money. My girls do not suffer because of a lack of that money and these other bills, they’re — at the present time they had the capacity to hurt me more than what I figured Karen would at that time.
This is not a case of equitable estoppel. Tim and Karen did not refuse any child support offers by John “in order to later assert at the adoption proceeding that [John’s] consent was not necessary.” See Adoption of D.J.V. (1990), 224 Mont. 209, 214, 796 P.2d 1076, 1079. *386 Rather, John “has not performed his legal responsibility as a parent.” See D.J.V., 796 P.2d at 1079.
In a memorandum supporting its December 21, 1992, findings of fact and conclusions of law, the District Court stated:
There is no question that Dr. Heikkila’s borrowings for school have left him in financial trouble. This court cannot accept, however, that the payment of the minimal amount of child support would have led to the father’s downfall. Dr. Heikkila has shown that he can juggle his creditors, especially the student loans, and the court concludes that he could have done so while supporting his children. Indeed, he had a better payment record when he had little earnings as a student.
We agree with the District Court. Parents are obligated to support their children. Sections 40-6-211 and 40-6-214, MCA. The District Court’s determination that John was able to support his children, yet failed to do so, is supported by substantial credible evidence. We hold that the District Court’s findings were not clearly erroneous.
II
Did the natural father waive his right to be present at the May 11, 1993, “best interest” hearing?
The District Court notified all parties by its Order of March 11, 1993, that a “best interest” hearing would be held on May 11, 1993. On May 4, 1993, John requested a continuance of the May 11th hearing. The reason for John’s request was that he had secured counsel, who would need a “reasonable amount of time to familiarize himself with the case.” The District Court denied John’s request on May 8th. Neither John nor his attorney appeared at the May 11th adoption hearing. John argues that the District Court abused its discretion by refusing to grant the continuance he requested.
Ruling on a motion for a continuance is in the sound discretion of the trial court. See Fields v. Wells (1989), 239 Mont. 392, 780 P.2d 1141; In re Marriage of Robbins (1985), 219 Mont. 130, 711 P.2d 1247. In the case before us, John had notice of the hearing, and ample time to secure counsel and arrange transportation from Colorado. Instead, he chose not to attend the hearing or to have counsel represent him. John was afforded the opportunity to attend the hearing, which satisfied all due process requirements as set out in Montana law. See, e.g., Adoption of R.M. (1990), 241 Mont. 111, 785 P.2d 709. Though adequately notified, John effectively waived his right to claim due process violations by failing to attend or dispatch an attorney to the *387 hearing. We hold that the District Court acted well within its discretion when denying John’s motion for a continuance.
Affirmed.
CHIEF JUSTICE TURNAGE and JUSTICE WEBER concur.