No. 86-99

IN THE SUPREME COURT OF THE STATE OF MONTANA

1986

_____

IN THE MATTER OF D.S.N.,
a Youth in Need of Care.

_____

APPEAL FROM:   District Court of the First Judicial District,
In and for the County of Lewis & Clark,
The Honorable Gordon Bennett, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Cannon & Sheehy; Edmund F. Sheehy, Helena, Montana

For Respondent:

Hon. Mike Greely, Attorney General, Helena, Montana
Dorothy McCarter, Asst. Attorney General, Helena
Mike McGrath, County Attorney, Peter Funk, Deputy,
Helena, Montana
Anne Sheehy, Helena, Montana

_____

Submitted on Briefs: April 30, 1986

Decided:   July 18, 1986

Filed:   JUL 18 1986

_____
Clerk

Mr. Justice Frank B. Morrison, Jr. delivered the Opinion of the Court.

K.N. appeals the order of the First Judicial District Court, County of Lewis and Clark, terminating his parental rights to his natural child, D.S.N. We affirm the decision of the trial judge.

A petition for temporary investigative authority and protective services for D.S.N. was filed December 19, 1984. On January 3, 1985, the natural parents of D.S.N. stipulated to the investigation, the continued placement of the child in foster care and the development of a treatment plan for all parties concerned. K.N. further agreed to attend the in-patient alcohol treatment program at Galen State Hospital.

Following completion of the alcohol treatment program, mental evaluations were completed on K.N., D.S.N. and D.S.N.'s natural mother. Based on these evaluations, a treatment plan was established by the mental health evaluator, Sue Barton, and the family's social worker, Joe Baumgardner.

The treatment plan contained four goals:

1) Both parents must be mentally/emotionally able to provide for and respond to [D.S.N.'s] mental/emotional needs.

2) Both parents must be economically able and capable to adequately satisfy their own and [D.S.N.'s] basic needs for food, clothing and shelter.

3) Both parents must demonstrate they can live a life style conducive to the health and welfare of [D.S.N.] and be sufficiently able to parent, including being skilled in behavioral management.

4) [D.S.N.] must be sufficiently mentally/emotionally adjusted and able to return to the care, custody and control of her father or, in the alternative, her mother.

A hearing was held April 12, 1985. D.S.N. was found, by stipulation, to be a youth in need of care. The treatment plan was approved by the court and a hearing to review the parties' progress was ordered in six months.

The natural mother made no effort to comply with the treatment plan, nor did she express interest in either legal or physical custody of her child. On the other hand, K.N. attempted to comply with his treatment plan and expressed an intense desire to have custody of his child.

K.N.'s treatment plan included mental health counseling by his clinical social worker, Sue Barton. At the end of the six-month period, Ms. Barton submitted a report to the District Court recommending that K.N.'s custodial rights be terminated. A petition pursuant to § 41-3-607, MCA, was thereafter filed seeking to terminate K.N.'s parental rights. A two-day hearing was held and the petition was granted. The sole issue on appeal is whether the trial judge abused his discretion in terminating K.N.'s parental rights.

The relevant criteria for terminating parental rights are found in § 41-3-609, MCA.

> 41-3-609. Criteria for termination. (1) The court may order a termination of the parent-child legal relationship upon a finding that the circumstances contained in subsection (1)(a), (1)(b), or (1)(c), as follows, exist:
>
> . . .
>
> (c) the child is an adjudicated youth in need of care and both of the following exist:
> (i) an appropriate treatment plan that has been approved by the court has not been complied with by the parents or has not been successful; and
> (ii) the conduct or condition of the parents rendering them unfit is unlikely to change within a reasonable time.
> (2) In determining whether the conduct or condition of the parents is unlikely to change within a reasonable time, the court must enter a finding that continuation of the parent-child legal relationship will likely result in continued abuse or neglect or that the conduct or the condition of the parents renders the parents unfit, unable, or

3

unwilling to give the child adequate parental care. In making such determinations, the court shall consider but is not limited to the following:
(a)   emotional illness, mental illness, or mental deficiency of the parent of such duration or nature as to render the parent unlikely to care for the ongoing physical, mental, and emotional needs of the child within a reasonable time;
(b)   a history of violent behavior by the parent;
(c)   a single incident of life-threatening or gravely disabling injury to or disfigurement of the child caused by the parent;
(d)   excessive use of intoxicating liquor or of a narcotic or dangerous drug that affects the parent's ability to care and provide for the child;
(e)   present judicially ordered long-term confinement of the parent;
(f)   the injury or death of a sibling due to proven parental abuse or neglect; and
(g)   any reasonable efforts by protective service agencies that have been unable to rehabilitate the parent.
(3)   In considering any of the factors in subsection (2) in terminating the parent-child relationship, the court shall give primary consideration to the physical, mental, and emotional conditions and needs of the child. The court shall review and, if necessary, order an evaluation of the child's or the parent's physical, mental, and emotional conditions.

Each specific requirement found in the statute must be addressed by the court. In the Matter of R.B., Jr. (Mont. 1985), 703 P.2d 846, 848, 42 St.Rep. 1055, 1058. We disagree with K.N.'s contention that the trial judge failed to address all of the requirements.

Finding of fact VII states that "[K.N.] has not made sufficient progress with therapy to be able to be considered a fit parent." Finding of fact X states that "[K.N.] has continued to deny that problems exist with his previous care of [D.S.N.], making it virtually impossible to change his behavior." Both findings demonstrate that despite his good intentions to do so, K.N. has been unable to obtain the first goal of his treatment plan, to become mentally and emotionally able to provide for his child's mental and emotional needs. Other findings illustrate K.N.'s inability to achieve the third goal, that of living a lifestyle conducive to the

4

health and welfare of the child and being sufficiently able to parent. For instance, finding of fact XIV refers to the continually unstable relationship between K.N. and his present wife. And, finding of fact XV reflects the experts' opinions that K.N. may never be capable of caring for his child. Clearly, the general term "care for" includes being sufficiently able to parent.

Findings of fact VII, VIII and XVI combine to support a determination that K.N.'s condition rendering him an unfit parent is unlikely to change within a reasonable time. A reasonable time for D.S.N. is now. Section 41-3-609(3), MCA, mandates that in determining whether the parents' condition will change within a reasonable time, primary consideration should be given to the needs of the child. Two experts testified that D.S.N.'s age (9) makes it imperative that she be provided with a loving, stable home as soon as possible. D.S.N.'s well-being will not withstand further delay.

Other findings reflect some of the factors recommended by the statute for use in determining whether the parent's condition will change. Finding of fact XIII notes K.N.'s history of violent behavior toward his wife; finding of fact IX summarizes D.S.N.'s continual exposure to violence and alcohol while living with K.N.; and the findings as a whole reflect K.N.'s failure to benefit from the services provided.

There is no question but that the findings of the trial judge address each specific requirement found in § 41-3-609, MCA. Furthermore, those findings are supported by substantial credible evidence.

Sue Barton testified in response to the question whether D.S.N. has time to wait for her father to become a fit parent as follows:

5

> No , I think [K.N.] could be coming to therapy weekly for two years hence and we could be in the same spot. I think that if [D.S.N.] is going to be a productive member of society and be anywhere near being emotionally healthy, she has to be in a place where she feels safe and protected and can go forward with talking about the kinds of things she's experienced already under the care of her parents.

Tr. p. 52.

Margaret Stewart, an expert in the child welfare area, supported Ms. Barton's stance. She stated that although D.S.N.'s problems now lie under the surface, once she reaches adolescence, they will explode. D.S.N. needs to become stabilized now, before she reaches adolescence. (Tr. p. 90.)

Other testimony supports the conclusion that K.N. will be unable to change in the near future. Sue Barton testified that after six months of counseling, K.N. has been unable to achieve the first essential step toward improvement, the ability to trust another human being. (Tr. pp. 43-45.) This inability to trust results in an inability to relate to others in a normal manner. An individual with this problem will be unlikely to raise a child to be emotionally and mentally healthy. (Tr. p. 63.)

Other testimony related to K.N.'s inability to properly respond to D.S.N. as a parent. In his relationship with his daughter, K.N. is the child. He relies on D.S.N. for protection and satisfaction of his own needs. (Tr. pp. 43, 60.) Further, when K.N. drinks, he physically neglects D.S.N. and becomes prone to violence. (Tr. p. 46.) And, substantial evidence casts doubt on K.N.'s ability to refrain from drinking for an extended period of time. (Tr. pp. 39, 45, 150.)

The evidence unequivocally supports the conclusion that K.N. is unable to provide D.S.N. with the minimum care and resources needed to assure adequate growth and development.

6

In the Matter of C.A.R. and P.J.R. (Mont. 1984), 693 P.2d 1214, 1221, 41 St.Rep. 2395, 2402. The decision of the District Court is affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

7