No. 88-367

IN THE SUPREME COURT OF THE STATE OF MONTANA

1989

IN THE MATTER OF
A.H., A.H., J.A.H.,
Youths in Need of Care.

APPEAL FROM: District Court of the First Judicial District,
In and for the County of Lewis & Clark,
The Honorable Henry Loble, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

J. Mayo Ashley, Helena, Montana

For Respondent:

Hon. Marc Racicot, Attorney General, Helena, Montana
Dorothy McCarter, Asst. Atty. General, Helena
Mike McGrath, County Attorney, Helena, Montana
Carolyn Clemens, Deputy County Atty., Helena
Randi Hood, Guardian Ad Litem, Helena, Montana

Submitted on Briefs: Feb. 3, 1989

Decided: March 2, 1989

FILED
'89 APR 2 AM 11 16
ED SMITH CLERK
MONTANA SUPREME COURT
Filed:

Clerk

Mr. Justice R. C. McDonough delivered the Opinion of the Court.

This is an appeal from a ruling of the District Court of the First Judicial District, Lewis and Clark County, terminating the mother's parental rights to J.H., a minor, and committing T.H. and A.H., minors, to the long-term custody of the State. We affirm.

The mother frames a single issue on appeal: Whether the District Court erred in terminating the mother's parental rights to J.H. and in granting long-term custody of T.H. and A.H. to the State Department of Family Services.

This action is the latest in a series of dealings between the State and the mother, who suffers from emotional and psychological disturbances. The mother initially relinquished custody of her four minor children on a voluntary basis, and they were placed in foster homes. In March of 1986, the State petitioned the District Court for temporary custody and protective services. After several hearings on the petition, the court issued an order in June of 1986, in which it found the children to be "youths in need of care" and directed the Lewis and Clark County Department of Family Services (Department) to develop a treatment plan.

The plan developed by the Department was designed to reunite the children with the mother, and was divided into three phases. The goal of the first phase was:

> To restore [the mother]'s mental/emotional health and capability to a level sufficient to enable her to conduct herself behaviorally in a manner which would make it reasonable for mental health and child protective service professionals to believe her likely to function responsibly in the future as an adult, parent and homemaker.

The goal of the second phase was for the mother to maintain the mental and emotional stability established during the first phase. The third phase would then attempt to restore full custody of the children to the mother. The plan would take approximately one year. During that time, the children would remain in the custody of the Department.

The mother was making apparent progress under the first two phases, and in the spring of 1987, the process of reintegrating the children into the mother's home began. However, the children soon exhibited behavioral problems. On November 10, 1987, the State filed a petition seeking to to terminate the mother's parental rights, or in the alternative, for long-term custody of A.H., T.H. and J.H. (the fourth child had since reached majority). On November 20, the State petitioned for temporary investigative authority and protective services. The court granted the latter petition, provided that the children remained in foster care and had no contact with the mother until she had completed a psychiatric evaluation.

A hearing on the State's petition to terminate parental rights was held in January of 1988. The court heard evidence concerning the state of the mother's mental health, as well as the health of the children. In March of 1988, the court issued its order terminating the mother's parental rights as to J.H., and granting long-term custody of A.H. and T.H. to the State. This appeal followed.

I. Termination of Parental Rights

In our recent decision, Matter of J.L.S. (Mont. 1988), 761 P.2d 838, 45 St.Rep. 1842, we outlined the legal standards to be applied to this type of case. We noted that a parent's right to custody is a fundamental liberty interest. The State may petition for termination of parental rights, but it must show by clear and convincing evidence

3

that the statutory criteria for such termination have been met. J.L.S., 761 P.2d at 840.

The District Court views the evidence and decides whether the State has met that burden. We will not disturb the District Court's decision "unless a mistake of law exists or the factual findings are not supported by substantial credible evidence." J.L.S., 761 P.2d at 840-41 (citing In re V.B. (Mont. 1987), 744 P.2d 1248, 44 St.Rep. 1838).

The termination of parental rights is governed by § 41-3-609, MCA. Under this statute, parental rights can be terminated only after three requirements are satisfied: (1) the children have been adjudicated youths in need of care, (2) a court-approved treatment plan has not been complied with or has been unsuccessful, and (3) the conduct or condition causing the problem cannot be rectified within a reasonable time.

J.H., A.H., and T.H. were adjudicated youths in need of care by the District Court's order of June, 1986. That order was not appealed, and both sides agree that the first requirement under the above statute was therefore met.

The District Court made a specific finding on the second requirement; the court-approved treatment plan had not been complied with due to disruption caused by the mother, and it was therefore not successful. Counsel for the mother disputes this finding on appeal. Counsel argues that witnesses who testified about lack of compliance with the plan gave inconsistent testimony on some points, and were in conflict with testimony given by other witnesses.

In addition to the mother, nine witnesses testified before the District Court. Joe Baumgardner, the Department social worker who submitted the treatment plan approved by the court, testified about his concerns regarding behavioral problems (e.g., defiance and aggressiveness) that resurfaced

4

in the children after each visit with the mother during the second phase of the plan. Baumgardner had become worried that even if the mother were able to gain some control of her own problems, she might not be able to deal with the children. He also testified about actions by the mother in violation of the plan: her association with known and suspected felons (one of whom had been convicted of sexually deviant conduct with children) that brought the children into contact with these people; her interference with the children's schooling; her arrest for assaulting one of the children; and other conduct Baumgardner characterized as "bizarre," causing him to fear for the safety of the children in the mother's home.

Sandi Ashley, a private therapist who has treated the mother and two of the children at various times since 1982, testified about the mother's consistent refusal to take prescribed medication and her threatening behavior toward Ashley and personnel in Ashley's office. Ashley also testified about the mother's unpredictable behavior toward the children, which had caused them to distrust her, and about the children's complaints that the mother was not complying with the treatment plan.

There was also testimony by Dr. George Cloutier, who has diagnosed the mother as being a manic depressive in a hypomanic stage. Dr. Cloutier also testified about having difficulty in getting the mother to take prescribed medication and about the mother's difficulty in benefitting from therapy.

The State also presented documentary evidence concerning the behavioral problems that Baumgardner had noticed in the children, which stemmed from their association with their mother. This evidence described behaviors such as uncontrolled urination, aggression and threats to burn down a

5

foster home. The children continue to exhibit anxiety, identity disorders, depression and possible suicidal tendencies. Two of the children have been recommended for extensive therapy in order to address emotional and personality disorders.

The District Court's finding as to the second statutory requirement was supported by substantial credible evidence. The record shows that the mother failed to comply with the treatment program. The continuing problems exhibited by the mother and the children are clear evidence that the plan has not been successful.

The court also found that the third requirement was satisfied; it was apparent that the conduct or condition rendering the mother unfit was unlikely to change within a reasonable time. The court made a specific finding that continuation of the parent-child legal relationship would result in continued abuse or neglect of the children.

Counsel for the mother also disputes this finding, and first points out that Dr. Cloutier testified it would take three or four months to correct the mother's condition with proper therapy. This, it is argued, is a reasonable time. However, Dr. Cloutier testified that the three- or four-month period would be a minimum time frame for stabilizing the mother. It would then be necessary to assess her situation and begin a course of treatment. Dr. Cloutier also reiterated the problems encountered in getting the mother to take medication. This could lengthen the stabilization period significantly.

The mother's counsel also argues that the District Court ignored the statutory considerations to be used in making this finding. Section 41-3-609(2), MCA, lists factors to be considered before finding that continuation of the parent-child relationship would be detrimental. These

factors include an emotional or mental illness of the parent, a history of violent behavior by the parent, and any reasonable efforts by protective service agencies that have been unable to rehabilitate the parent.

The evidence discussed above shows these factors to be present in this case. The court also noted the mother's persistent and perhaps worsening condition, which was evident from her behavior at the hearing. The mother showed a lack of coherence and control to the point of screaming, pounding her fists and defecating in her pants. The District Court's finding on the third statutory requirement is supported by substantial credible evidence.

## II. Long-Term Custody

The District Court granted custody of T.H. and A.H. to the State until such time as they reach the age of 18, or until further order of the court. The court's authority to do so was derived from § 41-3-406, MCA. Under this statute, once a youth is found to be abused, neglected or dependent, custody of that youth can be transferred to the State. We will not overturn such a ruling absent a clear showing of abuse of discretion. In re Moyer (1977), 173 Mont. 208, 567 P.2d 47. Given the unfortunate circumstances resulting from the mother's emotional and psychological difficulties, it is clear that granting custody of these two youths to the Department was not an abuse of discretion.

The District Court applied the correct law to the facts before it, and its findings of fact are supported by substantial credible evidence. We therefore affirm the court's order.

_____
Justice

We Concur:

_____

John C. Sheehy
_____

L. C. Gulbrandson
_____

William E. Hunt
Justices

8