No. 89-277

IN THE SUPREME COURT OF THE STATE OF MONTANA

1989

IN THE MATTER OF
H.R.B. And K.R.B.,
Youths in Need of Care.

FILED
'89 OCT 17 AM 10 55
ED SMITH, CLERK
MONTANA SUPREME COURT

APPEAL FROM:   District Court of the First Judicial District,
               In and for the County of Lewis & Clark,
               The Honorable Jeffrey Sherlock, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        J. Mayo Ashley, Helena, Montana

    For Respondent:

        Hon. Marc Racicot, Attorney General, Helena, Montana
        Dorothy McCarter, Asst. Atty. General, Helena
        Mike McGrath, County Attorney; Leo Gallagher and
        Carolyn Clemens, Deputy Co. Attys., Helena, Montana

Submitted on Briefs:   Sept. 27, 1989

Decided:   October 17, 1989

Filed:

Clerk

Justice John Conway Harrison delivered the opinion of the Court.

This is an appeal from a ruling of the First Judicial District, Lewis and Clark County, terminating the mother's legal custodial rights to H.R. and K.R.B. and transferring legal custody of the children to the State. The mother retained the right to supervised visitation with her children. We affirm.

Appellant presents a single issue for review: Did the District Court err in terminating the mother's legal custodial rights to H.R. and K.R.B. and in transferring legal custody to the State?

On October 13, 1987, Lewis and Clark County Family Services personnel removed H.R. and K.R.B. from their mother's care and placed them at Shodair Hospital for evaluation. Both children had exhibited symptoms of emotional disturbance at school. The District Court subsequently issued an order for temporary investigative authority and protective services. During the investigative portion of these proceedings, Family Services discovered at least 32 referrals of the mother for abuse or neglect to Human Service agencies in Washington and Oregon. These agencies had intervened in the family and in 1981 the State of Washington removed the children from their mother for an extended time.

The mother has been evaluated by a number of mental health professionals since 1981 and all concur that the mother suffers from long-standing emotional problems that adversely affect her ability to parent. The children were evaluated at Shodair and both were found to be severely emotionally disturbed as a result of their mother's extensive abuse and neglect. Prominent in the children's history are

2

incidents of sexual and physical abuse by the mother's male friends and also their uncle. As a result of Shodair's recommendations, H.R. was placed in a foster home and K.R.B. was placed at the Deaconess Home where she will remain for at least two years. Both children will require extensive therapy.

The District Court adjudicated these children as youths in need of care on February 23, 1988. A treatment plan was formulated and approved by the District Court on April 13, 1988. The treatment plan outlined a two phase program, Phase I of which carried a 180-day timetable. On November 17, 1988, the Lewis and Clark County Attorney petitioned for permanent custody of the children to be awarded to the State (Montana Department of Family Services).

The December 28, 1988 permanent custody hearing transcript reveals that the State held itself to the standard of proof required to terminate parental rights pursuant to § 41-3-609, MCA, even though it did not seek termination of all parental rights. The District Court utilized § 41-3-609 criteria in reaching its decision. In relation to children adjudged youths in need of care, § 41-3-609, MCA, sets forth the following criteria for termination of parental rights:

> 41-3-609(1)(c) the child is an adjudicated youth in need of care and both of the following exist:
>
> (i) an appropriate treatment plan that has been approved by the court has not been complied with by the parents or has not been successful; and
>
> (ii) the conduct or condition of the parents rendering them unfit is unlikely to change within a reasonable time.

Because the parents' right to custody is a fundamental interest, the State must show by clear and convincing

3

evidence that the statutory criteria have been met. Matter of J.L.S. (Mont. 1988), 761 P.2d 838, 840, 44 St.Rep. 1842, 1845. Our decisions hold that we will not reverse a district court's decision regarding findings of fact unless the findings of fact are not supported by substantial credible evidence. Matter of A.H. (Mont. 1989), 769 P.2d 1245, 1247, 45 St.Rep. 395, 397.

The District Court found that the mother had not complied with the treatment plan and that the treatment plan had not been successful. Further, the District Court found that the mother's conduct was unlikely to change within a reasonable time.

Appellant contends that the District Court erred because the State did not present evidence that she failed to comply with the treatment plan. As well, appellant argues that the evidence does not support the conclusion that her behavior would not change within a reasonable time. We disagree.

At the hearing, the District Court heard evidence from the social worker supervising the treatment plan, one of H.R.B.'s foster parents, the four mental health professionals involved in the case, and the mother. At best, the testimony reveals that the mother had partially complied with the treatment plan. The District Court's findings acknowledge that some progress had been made toward achieving the objectives of Phase I of the treatment plan. However, contrary to appellant's apparent contention, partial compliance is not the same as the statutory criteria of compliance set forth in § 41-3-609(1)(c)(i), MCA. Also, appellant does not appear to challenge the District Court's finding that the treatment plan was not successful which is an alternative choice under § 41-3-609(1)(c)(i), MCA. Instances of the mother's noncompliance with the treatment

4

plan appear in the record as well as instances of compliance. The record contains no evidence that the mother complied with the treatment plan in its entirety. Thus, the record supports the District Court's finding that the mother had not complied with the treatment plan and that the treatment plan was unsuccessful.

Appellant next attacks the finding that the mother's conduct is unlikely to change within a reasonable time, the second prong of the termination criteria in § 41-3-609(1)(c), MCA. In support of her argument, appellant cites her treating therapist's testimony that she could "turn her(self) around" in eight months to a year, a reasonable time she contends. However, appellant mischaracterizes the therapist's testimony. Although the therapist did testify that appellant might be able to change her conduct in eight to twelve months, the therapist's prognosis was extremely guarded. He testified that the chances of the mother being able to take the children back sometime in the future were "not wonderful."

Also appellant's assertion that eight to twelve months is a reasonable time ignores the mandate of § 41-3-609(3), MCA. That mandate instructs the court to give primary consideration to the needs of the children when evaluating whether a parent's conduct is likely to change within a reasonable time. Thus the inquiry really focuses on the mental and physical health of the children and the urgency of their needs. Similar to the child in Matter of D.S.N. (1986), 222 Mont. 312, 722 P.2d 614, experts in this case testified that H.R. and K.R.B. need stability and predictability in their lives now if they are ever to become emotionally healthy. As with D.S.N., experts testified that further delay in providing H.R. and K.R.B. with that stability and predictability would be highly detrimental to

5

them. The testimony regarding the immediacy of the children's needs and the extremely guarded prognosis regarding the likelihood that the mother's conduct will change provided substantial credible evidence for the District Court's decision.

In summary, the District Court found that the State met its burden of proof under § 41-3-609(1)(c), MCA. Substantial credible evidence in the record supports that decision. Thus, the District Court's decision to transfer legal custody to the State was not an abuse of discretion.

We affirm the District Court.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

6