No. 90-480

IN THE SUPREME COURT OF THE STATE OF MONTANA

1991

FILED

FEB 14 1991

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

IN THE MATTER OF A.W. and A.V.,
Youths in Need of Care.

APPEAL FROM: District Court of the Sixteenth Judicial District,
In and for the County of Custer,
The Honorable Kenneth R. Wilson, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

J. Dennis Corbin; Brown, Huss & Corbin; Miles City,
Montana

For Respondent:

Marc Racicot, Attorney General; Deanne L. Sandholm,
Asst. Atty. General; Helena, Montana
Keith Haker, County Attorney; Garry P. Bunke, Deputy
Co. Atty.; Miles City Montana

Submitted on Briefs: December 20, 1990

Decided: February 14, 1991

Filed:

Clerk

Justice R. C. McDonough delivered the Opinion of the Court.

This is an appeal from an order of the Montana Sixteenth Judicial District Court, Custer County, terminating the parental rights of Roxanne Weaver Vingoe, the natural mother of A.W. and A.V. The mother appeals, alleging that the District Court erred in concluding that her daughters A.W. and A.V. are youths in need of care and terminating her parental rights. We affirm the order of the District Court.

A.W. was born on September 22, 1982 and A.V. was born on June 14, 1987. At the time of the district court hearing the mother was 26 years old. The natural father of A.V., Edward Vingoe, is currently incarcerated at Deer Lodge for sexual abuse and the natural father of A.W. is unknown.

The record discloses that between January 1987 and July 1988, the Custer County Department of Family Services (DFS) received six formal referrals regarding A.W. and A.V. The referrals included: 1) a January 20, 1987 notice of domestic violence between the mother and Edward Vingoe, the result of which extensively damaged their rented trailer home; 2) a September 21, 1987 referral that DFS make living arrangements for the children due to the mother's arrest on charges of assault; 3) an October 15, 1987 referral that DFS make living arrangements for the children due to the mother's arrest on theft charges; 4) a December 24, 1987 report to DFS from the mother that A.W. had been sexually abused by the mother's cousin, Charlie Weaver; 5) a July 11, 1988 report by a police officer that living conditions were such that A.V. had flies

crawling all over her and that Charlie Weaver was present in the house and in the midst of sexual activity with an unknown girl (A.W. was not on the premises at the time); and 6) an anonymous July 6, 1988 report that A.W. had been seen out as late as 11 p.m. approximately five to six times per month, sometimes with her alleged abuser, Charlie Weaver, and that the children were cared for out of the home for a period of two to three weeks because the house was infested with crabs.

These referrals led to the court's first order of August 8, 1988 declaring the children as youths in need of care and granting temporary legal custody to DFS for six months. From July 11, 1988 through September 28, 1989, and again from March 19, 1990 until the present time, the children have been in the protective custody of DFS. After a hearing on September 18, 1989, a stipulation was entered between the Custer County Attorney's Office, DFS, the mother, and the children's guardian ad litem. The stipulation provided that a prior petition for permanent legal custody by DFS filed in August of 1989 be dismissed, and that within two weeks of the stipulation custody of the children would be returned to their mother. The stipulation also provided that DFS would have temporary investigative authority for a period not to exceed six months and that DFS had a right to develop a treatment plan for the family to be presented to the court within thirty days for approval, and that such plan would not require the mother to participate in any treatment or programs that had already been completed by herself. The treatment plan approved by the court

was designed to assist the mother in improving her personal and parental skills. It included alcohol and drug evaluation and treatment, mental health counseling to help the mother deal with her own victimization from sexual abuse as a child, career counseling and work on self-esteem, and an effort to improve her judgment in protecting her children from harm by other persons. The stipulation further provided that neither Kenneth Yother nor the mother's cousin, Charlie Weaver, have any contact with A.W. or A. V. at the mother's home or elsewhere. The mother of A.W. and A.V. became involved with Ken Yother around December 1988. Their relationship was volatile. In January 1989, the mother filed a petition for a temporary restraining order against Yother. In her supporting affidavit she indicated that on December 31, 1988, Yother physically abused her and her unborn child by throwing her on the floor, stepping on her midsection and threatening to abort the fetus.

Kenneth Yother is an admitted sex offender. He recently was charged with deviate sexual conduct regarding his relationship with a seventeen year-old boy over some ten years and pled guilty to misdemeanor sexual assault on that charge. (Custer County Criminal Cause No. 3313.) He received a two year deferred imposition of sentence with certain terms and conditions, one of which provided that he would obey the court order with respect to A.V. and A.W. and have no contact with them.

In spite of the District Court's order the mother of A.W. and A.V. left Miles City, Montana with Yother for Las Vegas, Nevada,

4

taking A.V. and A.W. in violation of the stipulation with DFS. A few days prior to leaving, Yother's 13-year-old daughter allegedly told the mother that she had been raped by her father. During the move, A.W. did not attend school from October 1989 to January 1990. In March of 1990, the mother of A.W. and A.V. gave birth to a girl whose natural father is Kenneth Yother.

In its order terminating the mother's parental rights, the District Court took judicial notice of the earlier proceedings that were dismissed when the stipulation was entered. The District Court concluded that A.W. and A.V. are youths in need of care within the meaning of § 41-3-102(11), MCA, and that termination of the parent-child relationship was appropriate because the mother failed to comply with the court ordered treatment plans and that the conduct or condition of the mother was not likely to change within a reasonable time. The court further determined that the best interests of the children would be served by termination of the parent-child relationship and by awarding the permanent legal custody to DFS with the lawful authority to consent to the children's adoption.

The mother contends that the District Court erred in several respects. She contends that there were inadequate grounds to terminate her parental rights, that the evidence was insufficient to support termination, and that the termination therefore constitutes an abuse of discretion by the district court.

We disagree. The applicable criteria for termination are set out at § 41-3-609, MCA, which provides:

5

**41-3-609. Criteria for termination.** (1) The court may order a termination of the parent-child legal relationship upon a finding that the circumstances contained in subsection (1)(a), (1)(b), or (1)(c), as follows, exist:

. . .

(c) the child is an adjudicated youth in need of care and both of the following exist:

(i) an appropriate treatment plan that has been approved by the court has not been complied with by the parents or has not been successful; and

(ii) the conduct or condition of the parents rendering them unfit is unlikely to change within a reasonable time.

Section 41-3-609, MCA; See, e.g., In the Matter of A.H., T.H., and J.A.H. (1989), 236 Mont. 323, 326, 769 P.2d 1245, 1247-48. The statutes further provide that a "youth in need of care" is a dependent, neglected or abused youth. Section 41-3-102(11), MCA. The definition of a dependent youth includes a person under 18 years of age (1) who is without parents or guardian or not under the care and supervision of a suitable adult, or (2) who has no proper guidance to provide for the youth's necessary physical, moral, or emotional well-being. Section 41-3-102(10), MCA. An abused or neglected child or youth is defined as any person under the age of 18 whose normal physical or mental health or welfare is harmed or threatened with harm by the acts or omissions of the child's parent or other person responsible for the child's welfare. Section 41-3-102(1) through (2), MCA.

In this case, there is sufficient evidence meeting the necessary criteria to support termination of the mother's parental rights. In affirming the District Court's order, we are nevertheless mindful of the State's high burden in demonstrating that such termination is necessary. "Parental rights involve a

6

fundamental liberty interest, and a judicial decree terminating such rights must be supported by clear and convincing evidence. In the Matter of the Adoption of D.J.V. (Mont. 1990), 796 P.2d 1076, 1077-78, 47 St.Rep. 1522, 1524; In re the Adoption of C.R.D. (1989), 240 Mont. 106, 109, 782 P.2d 1280, 1282; citing Santosky v. Kramer (1982), 455 U.S. 745, 753-4, 102 S.Ct. 1388, 1394-95, 71 L.Ed.2d 599, 606. Parental rights do not exist without concomitant obligations. D.J.V., 796 P.2d at 1078. Here, there is clear and convincing evidence supporting the decree terminating the mother's parental rights. The mother continually exposed her children to a harmful living environment fraught with potential for sexual abuse. She apparently has a propensity to associate herself with physically and sexually abusive men and has shown no likely prospect that she will change this course of conduct. She has failed to comply with her treatment program in keeping herself and her children away from Ken Yother and in refraining from using alcohol. She reported a possible rape upon A.W. by her cousin Charlie Weaver but despite the terms of the stipulated order has failed to keep A.W. away from this man.

Thus, the District Court properly adjudicated A.W. and A.V. "youths in need of care" because they are not under the care and supervision of a suitable adult, § 41-3-102(10)(b), MCA; they have no proper guidance to provide for their necessary physical, moral, or emotional well-being, § 41-3-102(10)(c), MCA; and they are threatened with sexual and physical abuse due to the continued harmful associations of their mother, § 41-3-102(2), MCA. The

7

mother has failed to comply with an appropriate court approved treatment plan, furthermore such plan has not shown any indications of success. The conduct and condition of the mother in associating herself with sexually abusive men is unlikely to change--indeed it has failed to change--within a reasonable time so as to make her a fit parent. Section 41-3-609, MCA.

The mother contends that the District Court's dismissal of the first petition for permanent legal custody and return of the children to her absolves her of any past misconduct that might be construed as abuse and neglect. This contention lacks merit. At no time have the earlier orders of the court adjudicating the children as youths in need of care ever been appealed. Once that determination is made, the court may terminate parental rights if the other two statutory criteria are met: (1) that an appropriate court approved treatment plan has been unsuccessful or not complied with, and (2) the conduct or condition of the parents rendering them unfit is unlikely to change within a reasonable time. Section 41-3-609, MCA; In the Matter of T.C. and R.C. (1989), 240 Mont. 308, 313-14, 784 P.2d 392, 395. The statute only requires that the parents fail to comply with an appropriate court approved treatment plan; it does not require that a treatment plan is in effect at the time of termination. Matter of J.L.S. and A.D.S. (1988), 234 Mont. 201, 206, 761 P.2d 838, 841. The District Court's earlier decision to dismiss the initial petition and not terminate the mother's parental rights was based in part on the formulation of a treatment program for the mother and was contingent upon future compliance

8

with such program. The mother's continued failure to comply with treatment and to continually endanger her children preclude her from claiming that the dismissal has cleared her of her past conduct.

Finally, the court also met its obligation to consider the factors set out in subsections (2) and (3) of § 41-3-609, MCA, which provide:

> (2) In determining whether the conduct or condition of the parents is unlikely to change within a reasonable time, the court must enter a finding that continuation of the parent-child legal relationship will likely result in continued abuse or neglect or that the conduct or the condition of the parents renders the parents unfit, unable, or unwilling to give the child adequate parental care. In making such determinations, the court shall consider but is not limited to the following:
>      (a) emotional illness, mental illness, or mental deficiency of the parent of such duration or nature as to render the parent unlikely to care for the ongoing physical, mental, and emotional needs of the child within a reasonable time;
>      (b) a history of violent behavior by the parent;
>      (c) a single incident of life-threatening or gravely disabling injury to or disfigurement of the child caused by the parent;
>      (d) excessive use of intoxicating liquor or of a narcotic or dangerous drug that affects the parent's ability to care and provide for the child;
>      (e) present judicially ordered long-term confinement of the parent;
>      (f) the injury or death of a sibling due to proven parental abuse or neglect; and
>      (g) any reasonable efforts by the protective service agencies that have been unable to rehabilitate the parent.
>      (3) In considering any of the factors in subsection (2) in terminating the parent-child relationship, the court shall give primary consideration to the physical, mental, and emotional conditions and needs of the child. The court shall review and, if necessary order an evaluation of the child's or the parent's physical, mental, and emotional conditions.

Section 41-3-609(2) through (3), MCA. In determining that the

9

mother is unfit and unlikely to change her conduct or condition in this case, the court apparently gave considerable weight to subsections (2)(d) and (2)(g) of § 41-3-609, MCA, listed above. Also the mandate of subsection (3) instructs the court to give primary consideration to the needs of the children when evaluating whether a parent's conduct is likely to change within a reasonable time. Thus, the inquiry really focuses on the mental and physical health of the children and the urgency of their needs. In the Matter of H.R.B. & K.R.B. (1989), 239 Mont. 387, 390, 780 P.2d 1139, 1141. The District Court's findings of fact and conclusions of law set forth the testimony and opinions of mental health and child care professionals regarding the mental and emotional states of the children and indicate the court's careful consideration of the needs of the children in its decision. This Court will not overturn a transfer of custody of abused, neglected, or dependent youth to the State absent a clear showing of abuse of discretion. T.C., 784 P.2d at 394; A.H., 769 P.2d at 1249. We find no abuse of discretion in this case. The order of the District Court is

**AFFIRMED.**

_____
Justice

We Concur:

_____

_____

_____

_____
Justices

11