No. 91-423

IN THE SUPREME COURT OF THE STATE OF MONTANA

1992

IN THE MATTER OF
J.J.C.H. and C.M.H.,
Youths in Need of Care.

APPEAL FROM: District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Hon. Maurice R. Colberg, Jr., Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Paul E. Toennis, Toennis Law Office; Billings,
Montana

For Respondent:

Bard Middleton, Attorney at Law, Billings, Montana

Guardian Ad Litem:

Damon Gannett and Marvin R. Ventrell, Attorneys at
Law, Billings, Montana

Submitted on Briefs: January 23, 1992

Decided: March 3, 1992

FILED

MAR 3 - 1992

Filed: *Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

Clerk

Justice John Conway Harrison delivered the Opinion of the Court.

C.H., the natural mother of J.J.C.H. and C.M.H., appeals from the order of the Thirteenth Judicial District Court, Yellowstone County, terminating her parental rights and awarding custody and care of J.J.C.H. and C.M.H. to the Montana Department of Family Services. We affirm.

The mother presents one issue on appeal which we rephrase as follows: Did the District Court abuse its discretion when it terminated the mother's parental rights to J.J.C.H. and C.M.H.?

C.H. is a twenty-three-year-old mildly mentally retarded woman. She is the natural mother of three children, two of whom are the subjects of this proceeding, J.J.C.H. and C.M.H. J.J.C.H. was born November 30, 1987; C.M.H. was born October 26, 1989. The location of the fathers is unknown.

The Yellowstone County Health Department became involved with this family on October 30, 1989, after receiving a referral from Saint Vincent Hospital that a new mother needed assistance with her newborn baby. The county health nurse instructed C.H. on feeding techniques. After repeated instruction, C.H. demonstrated little progress in improving her feeding techniques.

The Department of Family Services (Family Services) became involved with this family on November 3, 1989, after receiving a referral that C.H.'s home was a health and safety hazard. Upon arriving at C.H.'s residence, the social worker found the residence unsanitary. The social worker testified that she found dirty

2

dishes, dirty diapers, animal feces, food, garbage, and cigarette butts strewn about the house. It appeared that dishes were being reused rather than washed. The newborn apparently had not been bathed for several days. J.J.C.H., approximately two years old at the time, was observed picking up food from the floor and eating it.

At the time of the initial involvement, C.H. and her two children lived with C.H.'s sister, her three children, and her boyfriend. Some of the uncleanliness was ascribed to C.H.'s sister, however, cleanliness of the home continued to be a concern throughout these proceedings.

Additionally, many household hazards that could be potentially dangerous to young children existed in C.H.'s home. C.H. experienced difficulty in protecting her children from such hazards because she did not recognize them as hazards or she lacked the attention needed by a parent to keep such items away from children. Both the social worker and the county health nurse observed J.J.C.H. with hazardous items in the child's hands; they also observed C.H.'s failure to take the items from J.J.C.H. until instructed to do so.

Both children suffered developmental delays, yet when they were removed from C.H.'s care their development improved substantially. For example, C.H. experienced difficulty in providing stimuli for the children's intellectual development. J.J.C.H. was nonverbal at age two, while average children his age have a vocabulary of approximately twenty words. To confront this

3

problem, C.H. was unsuccessfully instructed to speak properly to the children and not to use "baby talk."

Shortly after the County Health Department and Family Services became involved with C.H., C.H. moved to Lewistown. Referrals were made to Lewistown Family Services shortly upon C.H.'s arrival. Family Services filed a petition in the Tenth Judicial District Court for temporary investigative authority on January 19, 1990, after it learned that C.M.H. was admitted to the hospital with double ear infections and diarrhea that began approximately three to four days prior. The attending physician's diagnosis was moderately severe failure to thrive, probably secondary to inadequate parenting. On that basis, the court issued an order for protective services on January 22, 1990; both children were placed in a foster home.

J.J.C.H. and C.M.H. were transferred to a foster home in Billings when C.H. moved back to Billings. C.H. met with social workers and the county health nurse on various occasions regarding parenting her children. C.H. had supervised visits with her children in which the social workers and nurses observed C.H.'s conduct around the children.

C.H. entered into three service treatment agreements with Family Services which were approved by the court. The first agreement was effective March 21, 1990, through April 19, 1990; the second was effective June 1, 1990, through October 19, 1990; and the third was effective December 10, 1990, through March 1, 1991. The three agreements had varying terms, but all terms were intended

4

to help C.H. become a fit parent to regain custody of her children. Pursuant to these agreements, C.H. met with the social workers and C.H.'s children weekly, she attended some parenting classes, and she met with the county health nurse. The agreements also instructed C.H. on home cleaning techniques and safety standards. In violation of the agreements, C.H. failed to adequately clean her home, she failed to recognize potential hazardous conditions for the children, and she did not demonstrate an increased knowledge in parenting. C.H. also missed several appointments with the county health nurse.

Lewistown Family Services petitioned the court for temporary custody. On May 25, 1990, Judge Rapkoch adjudicated J.J.C.H. and C.M.H. as youths in need of care and granted legal custody of the children to Family Services for six months. Jurisdiction was then transferred from Lewistown to Billings where the Yellowstone County Attorney, on behalf of Family Services, filed a petition for permanent legal custody of J.J.C.H. and C.M.H., and for the termination of C.H.'s parental rights.

C.H. gave birth to her third child in December of 1990. In mid-January, C.H. and her new infant, N.T., relocated to the Crittenton Home in Helena where C.H. received in-house, supervised parenting instruction.

After hearing arguments on March 1 and 4, 1991, the District Court terminated C.H.'s parental rights to J.J.C.H. and C.M.H. and awarded Family Services permanent custody of the children. The court concluded that J.J.C.H. and C.M.H. were adjudicated youths in

5

need of care pursuant to § 41-3-102, MCA, that C.H. had not been in complete compliance with the service treatment agreements, and that her unfitness was unlikely to change. The court further found that a continuation of the parent/child relationships between C.H. and J.J.C.H. and C.M.H. would likely result in continued endangerment and neglect and that it was in the best interest of the children that C.H.'s parental rights be terminated. C.H. appeals.

The sole issue on appeal is whether the District Court abused its discretion in terminating C.H.'s parental rights to J.J.C.H. and C.M.H. A judicial determination terminating parental rights must be supported by clear and convincing evidence. In re A.W. (1991), 247 Mont. 268, 272, 806 P.2d 520, 523. This Court will not disturb the district court's decision on appeal unless a mistake of law exists or a finding of fact is not supported by substantial credible evidence. In re S.P. (1990), 241 Mont. 190, 194, 786 P.2d 642, 644. We presume that the district court's decision is correct and will uphold its findings unless a clear abuse of discretion exists. In re S.P., 241 Mont. at 194, 786 P.2d at 644.

Termination of parental rights is governed by § 41-3-609, MCA, which states in part:

> **Criteria for termination.** (1) The court may order a termination of the parent-child legal relationship upon a finding that . . . :
>
> . . .
>
> (c) the child is an adjudicated youth in need of care and both of the following exist:
>
> (i) an appropriate treatment plan that has been approved by the court has not been complied with by the parents or has not been successful; and

6

(ii) the conduct or condition of the parents rendering them unfit is unlikely to change within a reasonable time; . . .

. . .

(2) In determining whether the conduct or condition of the parents is unlikely to change within a reasonable time, the court must enter a finding that continuation of the parent-child legal relationship will likely result in continued abuse or neglect or that the conduct or the condition of the parents renders the parents unfit, unable, or unwilling to give the child adequate parental care. In making such determinations, the court shall consider but is not limited to the following:

(a) emotional illness, mental illness, or mental deficiency of the parent of such duration or nature as to render the parent unlikely to care for the ongoing physical, mental, and emotional needs of the child within a reasonable time;

. . .

(g) any reasonable efforts by protective service agencies that have been unable to rehabilitate the parent.

(3) In considering any of the factors in subsection (2) in terminating the parent-child relationship, the court shall give primary consideration to the physical, mental, and emotional conditions and needs of the child. . . .

C.H., the natural mother, contends that the State failed to prove by clear and convincing evidence that the above statutory requirements for terminating parental rights have been satisfied. In re F.M. (1991), 248 Mont. 358, 363, 811 P.2d 1263, 1266.

C.H. does not contest that J.J.C.H. and C.M.H. are youths in need of care. C.H. does argue that the District Court abused its discretion in terminating her parental rights because insufficient evidence existed to support the court's findings that she failed to comply with the treatment plans and that her fitness was unlikely to change within a reasonable time. We disagree. Substantial credible evidence existed supporting the District Court's

7

determination.

Testimony elicited from Merry Richmond, a social worker from Family Services; Janie Hackert, a nurse from the Yellowstone County Health Department; and Dr. Richard Agosto, the clinical psychologist who evaluated C.H.; supports the District Court's decision. The record reveals that these professionals participated in a program to help reunite C.H. with her two children and were qualified to testify regarding C.H.'s parenting abilities.

Merry Richmond testified that C.H. did not fully comply with the terms of the service treatment agreements which C.H. entered into with Family Services. Richmond commented on C.H.'s non-compliance as follows:

> Q. So you are testifying that this natural mother has not complied with the terms of this agreement [approved by the court December 17, 1990]; correct?
>
> A. Yes.
>
> Q. What has she failed to do?
>
> A. She failed to keep items that were potentially dangerous to the children out of reach. Her carpets weren't vacuumed at visits all the time. She did not attend parenting classes. She did not demonstrate increased knowledge of parenting skills in order to protect and adequately care for her children, recognizing dangerous situations and hazards. And attending to both children's needs without being distracted. Recognizing hunger cues. Not using baby talk around the children. Not being able to demonstrate successfully what she has learned.

Janie Hackert testified that she met with C.H. approximately thirty times during her involvement with C.H. The purpose of these meetings was to teach C.H. parenting skills. The following testimony was elicited concerning C.H.'s success.

8

Q. Were there things you feel [C.H.] was not successful in implementing?

A. Yes.

Q. What are those things?

A. I feel that she was unsuccessful in being consistent in safety measures in her home. And I feel she was also inconsistent in providing activities for the children during visits, games, activities.

Q. What about cleanliness of her house?

A. That, again, was inconsistent to date.

Dr. Agosto testified as to his evaluation of C.H. He performed a series of tests on C.H. to assess her ability and knowledge of parenting; he concluded that C.H. could not effectively parent three children at one time. Dr. Agosto testified that he did not anticipate that C.H. would grow in the area of basic parenting skills. Based on the services C.H. has already received, Dr. Agosto surmised that it may be possible for C.H. to parent less than three children, but concluded the probability as low.

C.H. argues that she substantially complied with the first two service treatment agreements and that due to the birth of her third child, she did not have the opportunity to comply with the third service treatment agreement. C.H. also contends that any non-compliance with the first two agreements was minimal. However, partial compliance with a treatment plan is insufficient. In re H.R.B. (1989), 239 Mont. 387, 389, 780 P.2d 1139, 1140. The District Court properly weighed the evidence concerning C.H.'s failure to fully comply with the treatment plans. Substantial

9

credible evidence existed to support the District Court's findings.

Next, C.H. contends that the District Court's finding that her unfitness as a parent is unlikely to change within a reasonable time is unsupported by substantial credible evidence. We disagree. The professionals involved in this case all testified that C.H.'s chances of becoming a capable parent were low. Additionally, the court considered a report from the Crittenton Home based on C.H.'s stay at the Home after the birth of her third child. The staff at the Crittenton Home found C.H. to be an incompetent parent even after participating in this structured residential parental training program. From this information, and after apparently giving considerable weight to subsections (2)(a) and (2)(g) of § 41-3-609, MCA, the court properly concluded that C.H. was incapable of becoming fit in a reasonable time.

Furthermore, the District Court was bound to give primary consideration to the physical, mental, and emotional conditions and needs of the children when determining that the mother is unfit and unlikely to change her conduct. Section 41-3-609(3), MCA. Best interests of the children is paramount and takes precedence over parental rights. In re J.W. (1988), 232 Mont. 46, 50, 757 P.2d 769, 771; quoting In re C.A.R. (1984), 214 Mont. 174, 182, 693 P.2d 1214, 1219.

In conclusion, we hold that the District Court did not err when it terminated C.H.'s parental rights. The record contains substantial credible evidence supporting the District Court's conclusion that C.H. failed to fully comply with the treatment

10

plans and that her lack of fitness as a parent is unlikely to change within a reasonable time.

Affirmed.

_____
                                   Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

11

March 3, 1992

## CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:


Paul E. Toennis
TOENNIS LAW OFFICE
316 N. 25th Street
Billings, MT 59103

BARD G. MIDDLETON
Attorney at Law
P.O. Box 1084
Billings, MT 59103-1084

DAMON GANNETT
Attorney at Law
P.O. Box 1375
Billings, MT 59101

Susan P. Dunn
Deputy Yellowstone County Attorney
P.O. Box 35025
Billings, MT 59107

MARC RACICOT, Attorney General
          , Assistant
Justice Bldg.
Helena, MT 59620

                              ED SMITH
                              CLERK OF THE SUPREME COURT
                              STATE OF MONTANA

                              BY:_____
                                   Deputy